STATE OF MISSOURI *ex rel.* WM. P. MILLER, Relator, *v.* PETER P. DAILY, CLERK OF ST. LOUIS CRIMINAL COURT, Respondent.

1. *Practice, criminal — Costs, exemption from payment of — Law relating to, in United States.*—The only feature of the English law relating to the exemption of poor persons from liability to pay costs, adopted in the criminal practice of the United States, is the obligation of the court to assign counsel for such accused persons as are unable to employ any.

2. *Practice, criminal—Appeal—Transcript—Clerk must make out transcript, although costs are unpaid.*— The duty (under Gen. Stat. 1865, ch. 215, § 16) of sending up a proper transcript, upon *supersedeas* in a criminal prosecution, is imperative, and is personal to the clerk, without the application of the accused; and for the performance of this duty the law imposes upon no one the obligation of advancing the fees.

*Appeal from St. Louis Criminal Court.*

*Peacock & Hart,* for relator.

*Patrick & Drummond,* for respondent, cited People v. Rockwell, 2 Scammon, 3 ; People v. Harlem, 29 Ill. 43 ; Knapp v. Lambert, 3 Gray, 377 ; Purdy v. Peters, 23 How. 328 ; 15 Abb. Prac. 160 ; Gardner v. Gardner, 2 Gray, 434 ; Carpenter v. People, 3 Gilman, Ill., 147 ; Sans v. People, *id.* 338 ; King v. Fry, 1 Leach's Crim. Cas. 129 ; 1 Chit. Crim. Law, 482 ; Rex v. Clark, 3 Burrows, 1308 ; Hullock's Law of Costs, § 220, n. 1.)

BLISS, Judge, delivered the opinion of the court.

The relator was convicted of a felony in the St. Louis Criminal Court, appeals to this court, and the clerk refuses to send up a transcript. To an alternative writ, directing him to make out, certify, and return a transcript of the record as required by law, he replies that he has made it out, certified it, and has offered to return it to this court upon payment by the relator of the fees due for making it, which he refuses to do.

Having given an opinion adverse to the claim of the clerk, we are asked to review it, and have given the matter new consideration. An appeal and *supersedeas* was allowed by the Criminal Court upon probable cause, or so much doubt as to render it expedient to take the judgment of this court upon the judgment

below (Gen. Stat. 1865, ch. 215, § 3), and there the case rests. How is the defendant to get into this court? The matter is disposed of, so far as the Criminal Court is concerned, and he might be very well satisfied to let it remain as it is with the sentence unexecuted. The case can only come here by a transcript, which, by section 16 of chapter 215, the clerk is imperatively required to make, certify, and return to the office of the clerk of this court. In civil cases, if the appellant fails to see that his transcript is filed, the respondent may produce one and take judgment; but in criminal cases, if it is not sent by the clerk upon *supersedeas*, according to the requirement of section 16, or not produced by the appellant when there is no *supersedeas*, according to section 17, I know not how the case will get here, or how the sentence is to be executed.

If the clerk's duty is limited by the ability or willingness of the accused to pay him for the transcript, he need only to procure the allowance of the *supersedeas*, and then postpone indefinitely or defeat altogether the execution of the sentence. There is a marked distinction in appeals where there is a *supersedeas* and where there is none. In the latter case (section 17) the transcript is to be " made out, certified, and returned on the application of the appellant or plaintiff in error, as in civil cases," and it may, perhaps, be reasonably inferred that the clerk would have the right to require his fee before delivering it to him, though that question we are not called upon to decide. In the one case the appeal comes here by the action of some court or judge, and the State is interested in its speedy decision, while in the other it is brought by the defendant at his option.

The respondent to this relation objects to any inference as to his duty from the difference in the requirements of sections 16 and 17, inasmuch as the latter section requires the transcript to be returned on application of appellant, " as in civil cases," and the requirement as to sending it up in civil cases is substantially the same as in said section 16. (See section 19, chapter 172.) If this requirement in relation to civil cases stood alone, there would be force in the argument, but there is another provision which modifies the provisions of section 19, chapter 172, and

OCTOBER TERM, 1869. 155

State of Missouri ex rel. Miller, relator, v. Daily, Clerk Crim. Court.

both taken together imply an active agency in the appellant. I refer to section 29, chapter 135, Gen. Stat. 1865, which says that "the appellant shall cause to be filed in the office of the clerk of the Supreme Court, at least fifteen days before the term of such court to which the appeal is returnable, a perfect transcript," etc. No such duty is imposed upon the appellant in criminal cases when a *supersedeas* has been allowed; nor is it contemplated that he has any active agency in bringing his case into the appellate court. In this view, if this relator had not desired a review of the judgment below, and applied for this writ, it would have become the duty of the attorney for the State to make this application.

In the former opinion reference was had to the liberal provisions of our statutes in securing the costs of clerks in criminal cases, without noting the exception to costs made by the defendant when convicted, in which case he alone is responsible for them. (Gen. Stat. 1865, ch. 219, § 3.) While, at common law, clerks and prothonotaries might in general insist upon their fees for services to individuals, they receive nothing from the king. The king neither paid nor recovered costs, and in many of the States the rule is partially retained. In most of the western States all that is allowed to clerks for their services in criminal cases, where there is no conviction, is a small annual allowance from their respective counties; while in Missouri everything is paid by the State or county, except the prisoners' costs upon conviction. In the vast number of indictments often improvidently found by grand juries, and never even prosecuted, the officers of court draw full fees, and thus swell the criminal costs of Missouri far beyond those of neighboring States.

I infer, also, that payment of this fee, as claimed by respondent, is not contemplated by the statute, from the care shown by our laws to give accused persons their full protection. The right to the opinion of the appellate court is carefully secured, and for probable cause the execution of the sentence is suspended until that opinion is had. No trial court, or judge thereof, or judge of the Supreme Court, will thus suspend execution unless the accused makes a case that entitles him to another hearing upon

the law; and if he must pave the way to such hearing by fees, this right might be denied him.

Respondent claims that the relator could only be excused from his liability to pay this fee by being admitted to defend against the indictment *in forma pauperis*. Our civil code adopts the provisions of the English law upon this subject, so far as to permit poor plaintiffs, in certain cases, to prosecute their action without giving security for or paying costs; but the only feature of it adopted in criminal practice is the obligation of the court to assign counsel for such accused persons as are " unable to employ any."

The whole claim, really, of the respondent is founded upon the assumption that the law will not require one's services without compensation. But this, so far as it applies to those who aid in the administration of justice, is a mere assumption. Circuit attorneys are compelled to prosecute, and only receive a fee upon conviction. Other attorneys are assigned to defend poor persons, and they are compelled to obey the order, but I know not the provision of law that secures their compensation. Witnesses and jurors formerly received nothing, or but a nominal sum, and now their fees are only intended to cover their expenses. It may be hard to compel clerks to make long transcripts, and run the risk of receiving no pay; it sometimes is burdensome, but if the law requires it, it is a part of the duties of their office. Their obligation in this regard is considered at some length in Miami v. Blake, 21 Ind. 32.

The duty, then, of sending up a proper transcript, upon *supersedeas* in a criminal prosecution, is imperative, and is personal to the clerk, without the application of the accused. It becomes essential to the further prosecution of the case, and to the execution of the judgment, in which the accused may have no interest; is a duty imposed after an order of *supersedeas* by the court or a judge, and is essential to the object of the order; and for the performance of this duty the law imposes upon no one the obligation of advancing the fees.

A peremptory *mandamus* will therefore issue. The other judges concur.