STATE ex rel. ALICE LaRUE, Relator, v. GEORGE C. HITCHCOCK, Judge, Respondent.

St. Louis Court of Appeals, February 4, 1913.

1. MANDAMUS: Motion to Quash Writ: Admits Well-pleaded Facts. A motion to quash an alternative writ of mandamus admits all the allegations that are well pleaded.

2. COURT STENOGRAPHERS: Nature of Office: Officers. A court stenographer, under the provisions of Sec. 11231 *et seq.*, R. S. 1909, is an officer of the court.

3. **STATUTES: Rules for Construction.** Statutes are to be construed together, and in construing them, the courts should have the whole body of the law in mind, harmonizing the provisions of the several statutes, if possible, and endeavoring to arrive at the intent of the lawmakers.

4. **PUBLIC POLICY: How Determined.** The public policy of the State is determined by its laws.

5. **COURT STENOGRAPHERS: Furnishing Free Transcripts to Poor Persons: Costs: Statutory Construction.** Sec. 2261, R. S. 1909, provides that the court may permit a party to prosecute an action as a poor person, in which case he shall have all necessary process without fees, tax or charge, and the court may assign counsel, who, as well as all other officers of the court, shall perform their duties without fee or award. Section 11233, which was enacted after section 2261 was enacted, provides that court stenographers shall receive for their services, in addition to a salary, certain fees from any person ordering a transcript of their notes. Sec. 11263, R. S. 1909 provides that a transcript of the evidence shall be furnished to the defendant in a criminal case, without cost to him, when the court is satisfied that he is unable to pay for the same, in which case the stenographer's fees shall be taxed as costs against the State or county. *Held*, that the provision for furnishing a transcript in criminal cases *gratis* is not a legislative construction of section 2261, so as to exempt stenographers from furnishing transcripts in civil cases to parties who are unable to pay for the same, under the principle "*expressio unius exclusio alterius est;*" *held, further*, that the provision in section 2261, requiring officers to perform their duties without fee or award for any party allowed to prosecute an action as a poor person, was not repealed by implication by section 11233, which provides for the payment of fees to stenographers, but both statutes should be considered together.

6. **STATUTES: Repeal by Implication.** A statute will not be held to have been impliedly repealed by a subsequently enacted statute, if it be possible to reconcile them with each other.

7. **COURT STENOGRAPHERS: Furnishing Free Transcripts to Poor Persons: Duty of Judge.** Sec. 2261, R. S. 1909, requiring officers of the court to perform their duties without fee or award for any party allowed to prosecute an action as a poor person, is applicable to court stenographers, as well as other officers of the court; and hence it is the duty of the judge, after having granted a party permission to sue as a poor person, to order the stenographer to furnish such party a transcript of the proceedings at the trial, without the payment of the fees chargeable therefor.

8. ———: ———: ———: Form of Order: Costs and Fees. Where the trial court orders the stenographer to furnish a person allowed to sue as a poor person a transcript of the proceedings at the trial, without the payment of the fees chargeable therefor, the legal fees for doing such work are to be taxed in his favor and are recoverable in the event judgment be entered for plaintiff, as provided by Sec. 2261, R. S. 1909; and the order on the stenographer should so provide.

9. MANDAMUS: Free Transcripts to Poor Persons: Courts: Court Stenographers. A trial judge who refuses to order the court stenographer to furnish a transcript of the proceedings to a person allowed to sue as a poor person, without the payment of the fees chargeable therefor, will be required by mandamus to make such an order.

## Original Proceeding by Mandamus.

Writ made peremptory.

*H. C. Whitehill* for relator; *Charles P. Comer* of counsel.

*George D. Harris* for respondent.

Statement.—The relator presented to one of the judges of our court, in vacation and at chambers, a petition for a writ of mandamus against the Hon. George C. Hitchcock, one of the judges of the circuit court of the city of St. Louis. In the petition for the writ it is set out that relator, as plaintiff, had brought her action against one Theodore T. Bland, as defendant; that that action was in due course assigned to the division of the circuit court of the city of St. Louis of which Hon. George C. Hitchcock was then judge presiding, and one A. C. Garber had been duly and regularly appointed and at the time mentioned was acting as the official stenographer of that division of the court; that after the bringing of the action and its assignment to the division mentioned, a motion for security for costs was filed, in opposition to which the plaintiff, relator here, filed her motion to sue as a poor person. The

latter motion coming on for hearing was sustained by the court, as provided by section 2261, Revised Statutes 1909. Thereafter and in due course the cause coming on for trial before the Hon. George C. Hitchcock, as judge, and a jury, and the evidence of the plaintiff, relator here, having been heard, the court announced that he would sustain a demurrer to the evidence, and plaintiff electing to stand on her evidence, the court sustained the demurrer and directed the clerk of the court to enter up judgment for defendant and discharged the jury from further consideration of the case without any verdict whatever having been returned by the jury and without a peremptory instruction for the jury to return a verdict in favor of defendant. That plaintiff, relator here, duly excepted to this action of the court and thereafter and in due time filed her motion for a new trial and to set aside the judgment, as well as a motion in arrest of judgment, all of which motions were overruled and exception saved. This at the June, 1912, term of the court. That during the same term plaintiff, relator here, filed her affidavit and prayed an appeal to this court, which appeal was allowed, plaintiff, relator here, being granted ninety days within which to file her bill of exceptions. That afterwards, and within that time plaintiff, petitioner here, applied through her attorney of record to Mr. Garber, the official court stenographer, for a full, complete and true transcript of the testimony in the cause, together with all exceptions thereto and rulings thereon; that Mr. Garber then and there refused and still refuses to furnish plaintiff, petitioner here, with such transcript unless she first pay him the fees and charges provided by law and which he claims he is entitled to receive for writing up and transcribing the testimony, notwithstanding the fact that the order allowing plaintiff, relator here, to sue as a poor person was still in force and had in nowise been set aside. That thereafter plaintiff, relator here, filed her motion,

asking the court for an order on the court stenographer to furnish the transcript above mentioned without requiring relator to pay him any fees or charges therefor. 'This motion coming on for hearing was overruled by the court, plaintiff excepting. The court still refusing to make such order, as it is alleged, the relator here avers that it is necessary for her to have the stenographic notes written out as before mentioned; that they will be lengthy and require a large amount of money to pay the fees allowed by law for them and that it is absolutely necessary that she have the evidence and proceedings at the trial, including exceptions made by her to the several rulings in the course thereof written out in order that she may be able to present a complete transcript of the evidence and of the proceedings had at the trial to this court and to bring the cause before this court. Averring that she is a poor person without means or property of any kind and unable in any way to make payment of the fees claimed by the official court stenographer, and that neither she nor her counsel have it in their power to raise the money in payment therefor, and that the stenographer has in his possession all of the notes containing the testimony and objections thereto and rulings thereon and exceptions thereto and that unless the judge of the circuit court be ordered by this court to make an order commanding the stenographer to write them out and furnish them to plaintiff, relator here, she will be wholly unable to prepare a bill of exceptions and unable to have her appeal properly reviewed by this court and will be deprived of certain remedy for the injury to her property rights, as alleged, and will be denied and deprived of the due administration of right and justice, and averring that she is without other adequate remedy, relator prays for a writ of mandamus directing the Hon. George C. Hitchcock, as judge of the division of the court in

which the cause was tried, to require the official court stenographer to make out and furnish her, without cost, a full, true and complete transcript of all the testimony taken in the aforementioned cause, including the objections thereto, the rulings thereon and the exceptions thereto. The petition for the writ of mandamus is verified by the petitioner and attested by her counsel. An alternative writ was issued returnable into our court December 31, 1912. At the same time relator also filed her application in this court for leave to sue as a poor person. In due time the respondent appeared and for return to the alternative writ has filed a motion to quash it on the assigned ground that the petition is not sufficient in law. The case being passed from time to time it was suggested to the court that in the meantime the Hon. George C. Hitchcock had been transferred from Division No. 8 to another division of the circuit court and the court stenographer mentioned as acting in the former division had likewise been transferred to that division, and that by agreement of counsel, and consent of court, the cause had been transferred from the division to which it was formerly assigned to the one over which Judge Hitchcock now presides.

The motion to quash was duly submitted on oral arguments by the several counsel, they afterwards by leave also filing written arguments.

REYNOLDS, P. J. (after stating the facts).— Treating the motion to quash as a return and in the nature of a demurrer to the petition, it follows that all of the allegations of the petition which are well pleaded are taken as confessed, so that these things are admitted: That the petitioner had a cause pending in the circuit court; that she was allowed by that court, on due consideration, to prosecute her suit as a poor person under the provisions of section 2261, R. S. 1909; that her cause went to trial before the Hon.

George C. Hitchcock and a jury, in the division of the circuit court over which that judge presided; that one A. C. Garber, having been duly appointed thereto, was at the time acting as stenographer in that division of the court; that the trial was had and that the testimony produced and all the proceedings at the trial were taken down in shorthand by him as the court stenographer; that demand having been made on him for, a full copy of his notes written out in English in longhand, he declined to make or furnish it unless his legal fees were first paid; that the circuit judge, on application for an order requiring the court stenographer to write out and deliver to the relator the copy of all the notes of the testimony taken and proceedings had at the trial, had declined to make such order; that the order allowing relator to sue as a poor person had never been revoked.

Counsel for the respective parties have furnished us with exceedingly elaborate briefs and arguments in support of their several positions. We have read and considered them carefully but do not deem it necessary to follow them in detail nor to notice all the points raised.

Under the practice as it existed prior to 1881, unless they were so fortunate in their clients or in their own financial conditions as to be able to employ stenographers or shorthand writers to attend them in court at the trial of causes, the testimony was taken down by the attorneys themselves in such manner as they best could; a few of them who were themselves skilled in shorthand-writing, taking it down in that form, and the bill of exceptions was made up from these notes of the testimony and proceedings at the trial, so taken down by the attorney, sometimes helped out by the notes which the judge himself may have taken down. Hence the attorneys had in their own hands the matter necessary for making up the bill of exceptions. This in a measure may account for the

former brevity of bills of exceptions, even of briefs, arguments, and opinions. The controversies that so often arose between counsel and sometimes between counsel and court over the settlement of the bill of exceptions were the occasion for the enactment of what are now sections 2030, 2031 and 2034 to 2037, then often, now rarely invoked. In the course of time, however, the art of stenography making great advances, and the use of the stenographer in the court being found to be a great saving of labor for the attorneys as well as for the judge, possibly also tending to accuracy, the office of court stenographer was created. Their first official recognition by law in our State was in 1881. At the session of the General Assembly in that year, by an Act approved March 19, 1881 (Laws 1881, p. 106), an act was passed authorizing the appointment of stenographic reporters in courts exercising criminal jurisdiction in cases of felonies in cities having a population of more than 100,000 inhabitants. They were made officers of the court, put under oath for the discharge of their duty, required to take down in shorthand and transcribe into legible English for the use of the State when so directed by the judge of the court, the proceedings attendant upon trials in cases of felonies. The shorthand notes taken down by the reporter were to be filed by him in the office of the clerk of the court and to become part of the record of the court and whenever required by the clerk to do so, the reporter was directed to transcribe them into longhand and in English, whereupon the clerk was to make out certified copies of the transcript for any person upon payment of the legal fees allowed by law for copies of other records and papers, provided that in cases of appeal and on motions for new trial the transcript of the evidence should be furnished to the defendant upon order of the court without cost to the defendant. Under this act the court stenographer received a monthly salary of $150 and as will be noticed did not receive

any fees for transcribing the notes or furnishing copies thereof to any person, fees for copies being collected by the clerk, he collecting the fees for them as
in case of making copies of other records, the defendant being exempt from payment of any fees in cases
of felonies. This act is substantially carried into our
present revision of 1909, as article 5, chapter 131, with
some changes not necessary now to be noted or pertinent to the consideration of this case. It was amended
in 1907 by an act approved March 19th (Laws 1907, p.
440), which added to the end of the section the provision that when it appeared to the satisfaction of the
court that the defendant was unable to pay the costs
of the transcript for the purpose of taking the appeal,
the stenographer should be allowed for making the
transcript the sum of fifteen cents per folio of one hundred words for each transcript so furnished, and that
when the court shall be satisfied that the defendant is
unable to pay for making such transcript, the same
shall be taxed as costs in the case against the State
or county as may be proper.

The first law authorizing the appointment of stenographers in civil causes in the civil courts, was an
Act approved March 31, 1887 (see Acts 1887, p. 145).
That act was confined to courts in cities and counties
having a population of 350,000 inhabitants or more.
With amendments not necessary to be noted here that
act is substantially article 1, chapter 113, Revised Statutes 1909. What is now article 2 of this chapter 113,
first appears in the revision of 1889, as article 2, chapter 153. Article 3 of chapter 113, supra, was adopted
in 1883 (see Laws 1883, p. 59), what is now section
11249 being added by the act of March 15, 1887 (Acts
1887, p. 160). With the recognition by our laws of a
stenographer as an officer of the court, the whole matter of preparing bills of exceptions has been changed.
Now bills of exceptions are made up from the notes
of the court stenographer, written out in longhand by

him and embodied in the bill of exceptions, which when signed by the judge and filed, become a part of the record of the court in that cause. Instead, therefore, of the attorney relying upon his own notes in making up the bill of exceptions as in the old days and under the former practice, he almost necessarily must rely upon, in fact does rely upon, these transcribed notes of the court stenographer.

The first section of article 1, chapter 113, supra, section 11,231, Revised Statutes 1909, provides that "for the purpose of expediting the public business and preserving an accurate report of proceedings in the trial of causes without expensive delays, the judge of the circuit court, or when said court consists of more than one judge, then the judge of each division thereof, . . . is authorized to appoint one official stenographer for such court or division. Such stenographer shall be an officer of such court, and shall file therein an affidavit to discharge faithfully and impartially the duties of such office, and shall also file therein a bond to the State of Missouri, in the sum of $3000, with two sureties approved by said judge, conditioned for the faithful and impartial discharge of such duties, upon which any person injured by breach thereof may maintain an action as upon other official bonds. Such stenographer shall hold his office until removed by an order of such judge or by an order of such judge appointing a successor."

The second section of this article, section 11232, Revised Statutes 1909, makes it the duty of the official reporter so appointed "to take full stenographic notes of the oral evidence offered in every case tried in said court or division, and of other proceedings when directed by said judge to be so reported, together with all objections to the admissibility of testimony and the rulings of the court thereon, and all exceptions taken to such rulings; to preserve all official notes taken in said court for future use or reference, and to

finally deposit the same with the records of said court, according to the directions of the judge thereof; and to furnish to any person a longhand transcript of all or any required part of said evidence or oral proceedings upon the payment to him of the fees hereinafter provided.''

The next section, section 11233, provides that the official stenographer shall receive the sum of $1800 per year, payable in installments of $150 at the end of each month of the year by the treasurer of the city wherein the court of which he is stenographer is situated, and that each stenographer shall also receive from any person ordering longhand transcripts of these notes such fees for the same as may be from time to time established by orders of the court or judge, not exceeding, however, fifteen cents per folio of one hundred words each; and that any judge of any court may, in his discretion, ''order a transcript of all or any part of the evidence or oral proceedings for his own use, and the stenographer's fees for making the same shall be taxed in the same manner as other costs in the case.''

The next section, section 11234, provides that in every case, except in suits by the State for the collection of delinquent taxes, where an official stenographer is appointed, the clerk of the court shall tax up the sum of three dollars, to be collected as other costs, and thereupon to be paid by the clerk to the city treasurer, to be applied to the salary of the stenographer.

That the court stenographer, under these provisions, is an officer of the court is clear. The language of section 11231 is unmistakable. There it is enacted: ''Such stenographer shall be an officer of such court.'' He must file an affidavit ''to discharge faithfully and impartially the duties of such office.'' He must file a bond to the State in a sum named ''conditioned for the faithful and impartial discharge of such duties.'' In this section, as well as throughout the several articles

of the whole chapter pertaining to court stenographers, he is unmistakably referred to as an officer. He has been held to be such in many cases, as see State ex rel. Martin v. Wofford, 121 Mo. 61, 25 S. W. 851; State ex rel. Tilley v. Slover, 113 Mo. 202, 20 S. W. 788; State ex rel. Scales v. Zachritz, 145 Mo. 269, 46 S. W. 961. Referring to the office itself, the Kansas City Court of Appeals held, in State ex rel. Tilley v. Ford, 41 Mo. App. 122, l. c. 129, that he is an officer holding a legislative as distinguished from a constitutional office.

' Primarily the obligation to pay the fees of the officers of the court may be said to rest on all litigants. By the ancient practice in England writs were "purchased," and at every step in the proceeding the party requiring services for which fees were to be paid, was required, at least supposed, to pay these fees to the officers for their services as fast as the services were rendered, even in advance of the services desired. [See Train v. Somerville, 22 Mo. App. 308, and cases there cited.] It is true that confessedly what is there said by Judge THOMPSON on this was *obiter,* but with his usual diligence that judge has collated many authorities, all fully sustaining him. The opinion in that case as to the payment of costs and fees was afterwards taken up by this court in State ex rel. Dale v. Ashbrook, 40 Mo. App. 64, a case in which that point was within the undoubted jurisdiction of this court, and the law as stated in the Train case followed.

By our law, however, and from a very early day, the expenses incurred in the prosecution of a cause are taxed as costs and recovered, ordinarily, by the prevailing party (section 2263), and collected either on fee bill or by execution, as the case may be. [Sections 2290 and 2292.] In certain cases they may be adjudged against the attorney (section 2291). Section 2258, Revised Statutes 1909, provides, briefly, that in all but some excepted cases, not necessary to notice any further than to say they do not cover the point before us

as to court stenographers, the non-resident plaintiff or person for whose benefit the action is to be commenced, shall, before he institutes such action, file with the clerk an undertaking in writing, signed by a resident of this State, acknowledging himself bound to pay all costs which may accrue in such cause, it being further provided that if any such person commence his action without filing such undertaking or depositing with the clerk of the court a sum of money sufficient to pay all costs, the court on motion may dismiss the same, unless the undertaking is filed or money deposited before the motion is determined, and the attorney of the plaintiff shall be ruled to pay all costs accruing therein.

Section 2259, in substance provides that if after commencement of the action by a resident of the State, he becomes non-resident, or the court is satisfied that he is unable to pay costs, the court shall rule him to give security for costs, and if he fails to give security or deposit a sum of money sufficient to cover costs, the court may on motion dismiss the cause, unless proper security is given or deposit made before the motion is determined.

As part of the law concerning costs is section 2261, Revised Statutes 1909. That section, after providing that the court, if satisfied that plaintiff is a poor person and unable to prosecute his or her suit and pay the costs and expenses thereof, may in its discretion permit a party to commence and prosecute the action as a poor person, further provides, "and thereupon such poor person shall have all necessary process and proceedings as in other cases, without fees, tax or charge; and the court may assign to such person counsel, who, as well as all other officers of the court, shall perform their duties in such suit without fee or reward; but if judgment is entered for the plaintiff, cos⁴⁻ shall be recovered, which shall be collected for the use of the officers of the court."

This is a venerable as well as humane provision of our law. Before the organization of our State government, while we were the Louisiana Territory, the Territorial Legislature, by an Act of November 7, 1808, recognized the right of a person to sue as a poor person. [See 1 Territorial Laws Missouri (Ed. 1842), chap. 68, p. 223.] One of the first laws passed after the admission of the State and the organization of the State government was an act approved January 11, 1822. [See 1 Territorial Laws Missouri, supra, p. 841.]. The fourth section of this act is almost word for word what is now section 2261 of the revision of 1909. It appeared practically in that form in the revision of 1825 (see vol. 1, R. S. 1825, sec. 2, p. 226), and with slight amendments in the several revisions as it finally appears as section 2261, Revised Statutes 1909. This section of the statutes finds firm support, in fact is merely carrying out the provisions of our Bill of Rights (section 10, article 2, of the Constitution), which ordains that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay." That principle is older than any of our Constitutions, older even than Magna Charta. That but compelled the King to give formal recognition of a right that had always been claimed by those of the Anglo-Saxon race.

In section 11232, above referred to, it is provided that the court stenographer is to furnish the longhand transcript, "upon the payment to him of the fees" provided in the statute. If this was all the law in force relating to payment of costs and fees, relator would have no case. Statutes, however, are to be construed together; not piece by piece; not sentence or phrase by itself; but as a whole; and in construing them we are to have the whole body of the law in mind, harmonizing all its provisions, if possible, and also

endeavor to arrive at the intent of the lawmakers. Let us test this provision by some examination of the public policy of the State, this latter determined, as often decided, by its laws.

Referring to what is now section 2261, it has been held that it covers actions by non-residents as well as by our own citizens. [See Carrier v. Missouri Pac. Ry. Co., 175 Mo. 470, 74 S. W. 1002.] It will be noticed that no exceptions in favor of non-residents suing as poor persons are made in what is now section 2258. But Judge BURGESS observes that a like discretion is to be held as conferred upon the court by section 2261, in requiring security for costs from non-residents as in the case of residents and citizens of our State. It was there distinctly held that these two sections are to be construed together; that section 2258 is to be held as subject to the provisions of section 2261, and that the latter covered both classes, although non-residents are not named in section 2261.

The court stenographer, as we have seen, is an officer of the court. That he is as completely included in section 2261 as is any other officer, is clear. Nothing in that section exempts him in terms. Discussing the status of court stenographers under the provisions of what was section 8256, Revised Statutes 1889, now section 11263, R. S. 1909, Judge GANTT, in State ex rel. v. Wofford, before referred to, says, at page 73, after holding that the court stenographer is an officer of the court, that "he is not better than the other officers of the court. By section 4293 (now 2712, R. S. 1909), it is provided that 'When any appeal shall be taken or writ of error filed, which shall operate as a stay of proceedings, it shall be the duty of the clerk of the court in which the proceedings were had to make out a full transcript of the record in the cause, including the bill of exceptions, judgment and sentence, and certify and return the same to the office of the clerk of the Supreme Court without delay.' " This of course ap-

plies when a cause is taken up on a full transcript. Referring to State ex rel. Miller v. Daily, 45 Mo. 153, and to State v. Armstrong, 46 Mo. 588, the latter overruled in State v. Davidson, 73 Mo. 428, but not on this point, as holding this statute was imperative and personal to the clerk for the performance of the duty imposed upon him by law, Judge GANTT says (l. c. 74): "Certainly it will be no greater burden on the stenographer to perform his duty than on the clerk, and the clerk cannot perform his duty until the stenographer transcribes the portion of the record that is in the notes. Attorneys are appointed to defend poor persons and give their services. Witnesses and jurors give their time and services for mere nominal fees often at great loss and inconvenience to themselves. The clerk of this court in the course of a year files a large number of transcripts for which he receives no docket fee." The same may be said with reference to the clerk of our court, it being specifically provided by section 10697, Revised Statutes 1909, that no docket or other fee shall be required in our court of persons permitted to sue as poor persons. It is also to be said that the court stenographer, being an officer of the court, is in the public service. He is paid for his time and his services in general out of public funds. It is further said by Judge GANTT in the above case (l. c. 73) that the legislation regarding court stenographers being in keeping with the spirit and humanity of the enlightened age in which we live and in harmony with the Constitution, emphasizes the rule of law and of the Constitution "that when a right exists all the means essential and necessary to the enforcement of that right are implied."

Counsel for the respondent claims that the express statutory provision requiring payment of the stenographer for furnishing a transcript in civil cases, having been enacted long after the statute allowing one to sue as a poor person, must prevail over the

latter, and that the provision that transcripts of stenographers' notes in criminal causes are to be furnished gratis, is a legislative construction that the exemption applies solely to criminal causes, on the principle *expressio unius exclusio alterius est*. We do not agree to either proposition. The latter claim of counsel is answered by the fact that this "expression" is in an entirely different statute, and without any reference whatever to the statute governing civil causes. Nor does it follow that because a later act provides for payment for the transcribed notes before delivery, the earlier statute remitting payment of fees by those allowed to sue as poor persons, has been repealed by implication. Says Sedgwick, Construction of Statutes & Constitutional Law (2 Ed.), Pomeroy's Notes, top page 105, after having analyzed the authorities, "But though it is thus clearly settled that statutes may be repealed by implication, and without any express words, still the leaning of the courts is against the doctrine, if it be possible to reconcile the two acts of Legislature together." [See also same work, top page 98, note (a).]

So our Supreme Court held in State ex rel. Maguire v. Draper, 47 Mo. 29, where at page 33, Judge BLISS says that while our Constitution is silent upon the question of implied repeals, and does not prohibit them, and "while repugnant statutes necessarily supplant previous ones, they must be clearly repugnant; for unless the legislative intent is expressed in terms, it will not be assumed if any other construction can be given to the subsequent act." This case is approved in State ex rel. Attorney-General v. Miller, 100 Mo. 439, 1. c. 446, 13 S. W. 677.

It may be said of all the legislation concerning court stenographers, that it is, in a sense, special legislation and legislation to meet a new condition. But the provisions of our law, opening our courts to all, regardless of any pecuniary qualifications—to the poor

man as well as to the man of substance, is at the very foundation of the right of access to the courts, and is firmly set into the very foundation of our government, and extends over all legislation regulating the due administration of justice.

It is impossible, when we consider the long settled policy of our State with reference to opening our courts to those unable to pay, and placing the service of its officers at their disposal without fee or price, to believe that the legislative branch of our government intended to keep from them the services of the most important, in many respects, of all those officers, the court stenographer, when an appeal is to be taken.

Through all this period of change, from the Act of 1822 before referred to, indeed from the territorial law of 1808, our lawmakers have scrupulously endeavored to provide against the misfortune of poverty and to see to it that poverty was not only not a crime but should not, because of that, close the doors of our courts of justice to anyone seeking entrance.

The provisions in the law relating to court stenographers and providing that they are to furnish their transcribed notes on being paid for them, are no more mandatory than are the provisions of sections 2258 and 2259. It is obvious that if a person permitted to sue as a poor person through the trial court, the Supreme Court and this court, if unable to give security for costs or to pay the comparatively small fees that the sheriff and clerk and witnesses are allowed, as compared with the fees or costs for transcribing the records in a litigated case, is to be deprived of the work of the court stenographer, the result would commonly be an entire defeat of the right of appeal. Holding out the promise of admission to the courts of the land without price when one has not the price, without security when one is unable to furnish it, and then to deny to the suitor the benefit of the machinery provided by law for the preservation of the record of the

proceedings in that court, would be to place our law-makers and courts among "those juggling fiends, no more believed, that palter with us in a double sense; that keep the word or promise to our ear and break it in our hope."

We are unable to accede to any view of the law which produces such a result as here contended for by respondent. We hold that it was within the power as well as the duty, of the honorable judge of the circuit court to order the stenographer of that court, acting in this cause, to furnish to the relator or her counsel the transcribed notes of the proceedings had at the trial of the case referred to in the petition for the writ.

It must also follow that the legal fees of the court stenographer are to be taxed in his favor for writing out and delivering his transcribed notes, as provided by section 2261, in the case of other officers. Out of abundant caution the court, in making the order on the stenographer herein required, should so state.

The alternative writ of mandamus heretofore issued in this cause is made absolute. *Nortoni* and *Allen, JJ.,* concur.