THE STATE EX REL. WILLIAM LASHLEY v. ANTHONY F. ITTNER, JUDGE OF CIRCUIT COURT.

Court en Banc, June 15, 1926.

**1. MANDAMUS: Affidavit Attached to Return: Hearsay: Legal Argument.** In a mandamus to compel a circuit judge to permit a convicted appellant to prosecute his appeal as a poor person and to direct the official stenographer to furnish him a transcript of the evidence at the expense of the State, an affidavit of the stenographer attached to the return, wherein affiant states he was told by counsel for appellant that appellant had plenty of money to prosecute his appeal and wherein he gives this court his opinion of what the law is, should be stricken from the files, what counsel told him being mere hearsay, and his view of the law being irrelevant.

**2. APPEAL: Capital Case: Transcript of Evidence: Duty of Stenographer.** Section 4102, Revised Statutes 1919, requires the clerk where defendant, convicted of a capital offense, has appealed, to make out a full transcript of the record, including the bill of exceptions, and from that duty is necessarily to be inferred the duty of the official stenographer to furnish to the clerk a transcript of his stenographic notes; and those duties are by the statute imposed upon them whether or not a request therefor is made by appellant, and whether or not he is granted permission to prosecute his appeal as a poor person; and it is the duty of the trial court to require the clerk and official stenographer to perform these duties; and Section 12681 does not change Section 4102 in those respects, or alter its mandatory requirements commanding the stenographer to furnish a transcript of his notes to the clerk, and the clerk to make out a complete transcript.

Corpus Juris-Cyc. References: Criminal Law, 17 C. J., Section 3368, p. 101, n. 32; Section 3440, p. 158, n. 4. Mandamus, 38 C. J., Section 169, p. 648, n. 22 New; Section 615, p. 892, n. 47.

Mandamus.

ALTERNATIVE WRIT MADE ABSOLUTE.

OTTO, J.—Relator, in this proceeding, seeks our writ of mandamus commanding respondent (Judge Ittner), Judge of the Circuit Court of the City of St. Louis, to make an order on Herman DaCosta, official stenographer of said court, to make and file with the clerk of said court a complete transcript of the notes taken by said stenographer in the trial of said relator in said court wherein he was found guilty of murder in the first degree and his punishment fixed at death; also to furnish relator a copy of said transcript to be used in making up a bill of exceptions, to be filed with the clerk of said court after same was signed and ordered filed by respondent.

The facts as alleged in the petition are as follows:

On October 31, 1924, relator was found guilty of murder in the first degree, and his punishment fixed at death.

A motion for a new trial was timely filed and overruled. An appeal was duly granted to this court, on January 6th, during the January term. On the same day relator filed a motion to be allowed to prosecute his appeal as a poor person, alleging in said motion the necessary and proper grounds therefor. This motion was supported by relator's affidavit and by oral testimony. Respondent overruled this motion, and on June 10, 1925, relator filed a motion asking respondent to make an order on Herman DaCosta, the official stenographer of said court, to transcribe his notes of said trial, file one copy thereof with the clerk of the circuit court, and furnish a copy thereof to relator, for use in making up a bill of exceptions to be filed with the clerk of said court after same was signed and ordered filed by respondent, judge of said court, in order that the appeal in said cause might be perfected and justice be done to the State and to this relator. Relator's petition further states that he is wholly without means or property of any kind; that he has been confined in jail at all times since his arrest under said charge of murder, and that his counsel has served him without fee or reward; that through his attorney he applied to said official stenographer for a copy of such transcript, but said stenographer refused and still refuses to furnish same to him, unless he is first paid the legal fee for such transcript. Our alternative writ was ordered on June 27, 1925. We quote respondent's return to said writ as follows:

"Comes now Anthony F. Ittner, respondent herein, in obedience to the alternative writ of mandamus heretofore issued in the above entitled cause by this Honorable Court, and for return thereto respectfully shows to the court as follows:

"Petitioner was duly tried by a jury, convicted of murder in the first degree, and sentenced to hang in accordance with said verdict, as more fully appears in the records of Division No. 11 of the Circuit Court for Criminal Causes, prior to the 6th day of January, 1925.

"On the 6th day of January, 1925, defendant filed his affidavit for appeal, which was granted by your respondent, and on the same date defendant filed a separate motion to prosecute said appeal as a poor person.

"On the 23rd day of January, 1925, motion to prosecute appeal as a poor person was continued for defendant as on affidavit. On the 4th day of April, 1925, motion to prosecute appeal as a poor person was continued by the court.

"On the 25th day of April, 1925, motion to prosecute appeal as a poor person was taken up by your respondent, defendant, his counsel and witnesses being present, testimony heard, at the conclusion of which, your respondent believed, and still believes, that the evidence produced by defendant did not warrant the granting of said motion, and same was accordingly overruled.

"Your respondent further states that he has at no time denied to petitioner any of his substantial rights, but that most of the delay in the final disposition of said cause has been due to the discourteous, dilatory tactics of counsel for petitioner.

"On the 11th day of June, 1925, petitioner filed his application for a rule and order of court on the official court reporter and clerk of the court for a transcript of the evidence and record, but before your respondent had opportunity to pass on said application, he was served with the alternative writ of mandamus herein.

"Your respondent respectfully submits, attached hereto as a part of this return, the affidavit of Herman DaCosta, the official court reporter of Division No. 11, touching matters brought before this Honorable Court by allegations in the petition of relator herein, inasmuch as certain allegations set out in said petition are false, distorted and calculated to mislead this Honorable Court as to the true facts in said cause.

"Wherefore, having made full return, your respondent respectfully awaits such other and further order in the premises as to this Honorable Court shall seem proper."

Relator moved to strike out the affidavit of Herman DaCosta, which motion was taken with the case.

On July 13, 1925, relator filed a reply to the return which return was supported by affidavit as a part thereof. On the same day relator's motion for judgment on the pleadings was filed.

I. This record presents many live and interesting questions, among which are: (1) Relator's motion to strike out the affidavit

of the official stenographer, attached to respondent's return. In an

**Affidavit.**
opinion heretofore written but not filed in this cause by GRAVES, J., this point was ably and exhaustively considered and, we think, properly decided. We adopt same and quote therefrom the following:

"This affidavit should be read by each member of this court. The damaging portion of it reads: 'That after the trial and before the filing of the motion for a new trial, Mr. Bottger, one of counsel for defendant, notified this affiant his firm would appeal if the court overruled the motion, and was plentifully supplied with money to pay for said appeal, the defendant having received a large sum in a case against a railroad in which his firm represented defendant.'

"The other portions of the affidavit are (1·) he admits that he was a reporter of the court over which Judge Ittner presided at the trial, and reported in shorthand, both the case upon the merits and upon the motion of relator to prosecute his appeal as a poor person; (2) that he has never refused to obey any order of the court to furnish a transcript to defendant free, and had expressed his willingness to obey an order of court to furnish free a transcript to counsel of relator; (3) that he so declared his willingness to Bottger and Beck of counsel for defendant below, and that they said they were trying to get a 'Colored Improvement Association' to pay for a transcript. Relator is a colored citizen. (4) He denies that he had a request from attorney Hardin to furnish transcript, but avers his willingness to obey an *order* of the court even now; (5) he then gives this court his learned opinion as to the statutory law; (6) he attacks the petition in this action for charging him with a failure to transcribe his notes, either for the clerk or relator, but reiterates that 'he is ready and willing to obey the orders of the court;' (7) he then toots his own horn as to his faithful performance of the duties of his office and regrets that his conceived idea of duty had been attacked and appeals to this court 'to hold this affiant guiltless and so declare to the world that affiant may be restored to the good opinion of a Bar and Bench he has assiduously sought to serve with candor and loyalty, and the stain removed from his name which he is helpless to remove otherwise.'

"The motion to strike out this affidavit, which is attempted to be incorporated in the return should be sustained, for these reasons:

"(1) DaCosta is no party to this proceeding and has no right to plead herein, even though the learned circuit judge is disposed to let him make a return herein; (2) throughout he only says that he is willing to act when Judge Ittner *orders* him to act; but Ittner in his return shows that he had long before ordered him not to act, by refusing to permit relator to appeal without paying costs of a transcript and other costs incidental to his appeal; (3) that part

of the affidavit about counsel having told him that relator had a big judgment and could pay for a transcript, is purely hearsay and utterly incompetent.''

II.   The return does not deny the allegation that relator is unable to pay the costs of his appeal, including the cost of a transcript of the stenographer's notes.   The affidavit filed in support of the return does not say that relator was unable to pay costs, but only states hearsay of others.

Aside from the points above discussed it is the statutory duty of the clerk in cases of this character when an appeal is granted to make out and certify to this court a full transcript of the record including the bill of exceptions, judgment and sentence.   This duty is mandatory, although no request is made therefor.   This being true, it is the statutory duty of the stenographer to make a transcript of his notes taken in cases of this character when appealed, although not ordered and paid for by appellant.   To hold otherwise would prevent the clerk from performing his statutory and mandatory duty, defeat the purpose of Section 4102, Revised Statutes 1919, and obstruct the orderly administration of justice.   The law on this subject is ably, exhaustively and correctly discussed in an opinion heretofore written but not filed in this cause by WALKER, J., which we adopt and quote as follows:

''It was the duty of the clerk of the trial court, when an appeal was taken in this case and the death penalty was assessed, to make out and certify to this court a full transcript of the record, including the bill of exceptions, judgment and sentence.   [Sec. 4102, R. S. 1919.]   This is a mandatory statute; while the duty imposed by it is, by its terms, personal to the clerk and should be performed without application from the accused or any one else, the clerk cannot, under our present system of making and preserving records of the trial of cases, perform the duty enjoined without the aid of the stenographer who, as well as the clerk, is an officer of the court.   [State ex rel. v. Hitchcock, 171 Mo. App. 109; Secs. 12680-1, ch. 115, R. S. 1919.]   These officers are under the supervision of the trial judge and if they fail to comply with Section 4102 it is his duty to require them to do so.   This conclusion necessarily follows in order that the purpose of Section 4102 may be carried out as is required to be done in the orderly administration of justice.   It is sententiously said by Judge GANTT, in ruling upon this statute in State ex rel. Martin v. Wofford, 121 Mo. 61, that, 'when a right exists all of the means essential to the enforcement of such right are implied.'

"If we construe Section 4102, with the purpose of its enactment in view, its terms afford convincing reasons for our conclusion as to the duties of the officers referred to. However, an undisputed line of precedents add further support to the reasons adduced.

"In State ex rel. Miller v. Daily, Cir. Clerk, 45 Mo. 153, this court held that Section 4102, requiring the clerk to send up a proper transcript, was imperative and personal to the clerk and that this duty should be performed without the application of the accused and that the law imposes upon no one the obligation of advancing the fees. A like ruling was made in State v. Armstrong, 46 Mo. 588, in which Miller v. Daily was expressly affirmed.

"In State ex rel. Martin v. Wofford, 121 Mo. 61, this court, after affirming the two preceding cases defining the duty of the clerk, says: 'Certainly it will be no greater burden on the stenographer to perform his duty than on the clerk, and the clerk cannot perform his duty until the stenographer transcribes the portion of the record that is in his notes.' The Wofford case was a proceeding in mandamus, sued out in this court to compel the judge of the Criminal Court of Jackson County to require the stenographer of that court to transcribe the notes of the evidence and other proceedings in a capital case and furnish the same without costs to the relator. In ruling upon this application the court held that mandamus will lie on behalf of a defendant to compel the judge of the criminal court to make and enforce an order against the stenographer to furnish the required transcript. The case is on all-fours with that at bar. Not only as to the nature of the action, but the characters of the relator and the respondent and the statutes construed.

"In reaching this conclusion I have not overlooked Section 12681, Revised Statutes 1919. Section 4102 has reference to the perfecting of appeals in capital cases. Section 12681, while general in its terms, if construed as modifying Section 4102, would result in depriving an indigent person convicted of a capital crime of the right of appeal, except at the discretion of the trial judge. Such a modification can only be held applicable by implication. I cannot bring myself to believe that the framers of Section 12681 so intended.

"Moreover, Section 4102 is general in its terms and application and has been embedded in our criminal procedure without material change for almost a century, having been incorporated into our Criminal Code in 1835; while Section 12681, although general in form, is, as Judge REYNOLDS well says in State ex rel. LaRue v. Hitchcock, 71 Mo. App. l. c. 125, 'in a sense special legislation enacted to meet a new condition,' viz: the creation of stenographers to aid the courts in the administration of justice. As such aids the law of their crea-

tion should not be so construed as to repeal a general statute by im-lication and thereby deprive a pauper, although convicted of a capi-tal offense, of a right to a review of his case in a court of last resort.''

The alternative writ hertofore issued in this cause should be made permanent. It is so ordered.

All concur, except *White, J.*, who dissents; *Blair, C. J.*, concurs in Paragraph II and the result in a separate concurring opinion.

BLAIR, C. J. (concurring).—I concur in Paragraph II and the result reached in the opinion of OTTO, J.

As I view it, Section 12681 does not amend Section 4102 by impli-cation so as to make it read in substance: ''When any appeal shall be taken or writ of error filed, which shall operate as a stay of pro-ceedings, it shall be the duty of the clerk of the court in which the proceedings were had to make out a full transcript of the record in the cause, including the bill of exceptions (if defendant shall furnish and pay for same or the court shall order the reporter to make same at the State's cost), judgment and sentence, and certify and return the same to the office of the clerk of the Supreme Court without de-lay.'' (Clause in parthenses mine.)

The court may determine whether the defendant is unable to pay the costs of a transcript of the stenographic notes and whether same should be furnished at the cost of the State. Its determination of that matter in this case is conclusive. The effect of the court's order is merely that the State shall not be required to pay the costs of such transcript, regardless of the outcome of the defendant's appeal or writ of error. Section 4102 requires the clerk to make out, certify and return a full transcript, including the bill of exceptions, etc., to this court without delay. No provision for the payment of costs is found in said section. Section 4103 throws light upon the legislative intent because it provides that the costs of such transcript ''shall not be required in advance,'' even in cases where the appeal does not operate as a stay of proceedings.

The duty of the clerk to make out, certify and return a full tran-script, including the bill of exceptions, when the appeal stays pro-ceedings, and the necessarily inferred and included duty of the re-porter to furnish a transcript of his stenographic notes to the clerk and counsel, to the end that the clerk may perform his duty, are not affected by the order of the court overruling defendant's request for a transcript of the stenographic notes at the cost of the State.

Although the court has refused to furnish to defendant such tran-script of the stenographic notes at the cost of the State, it is never-theless the duty of the reporter to make such transcript and furnish it to the clerk. His costs may be taxed in the case to abide the result

of the appeal, as oll other costs of the defendant in criminal cases must abide the result.

It is the plain duty of respondent to require his court reporter to furnish to the clerk a transcript of his stenographic notes. This is substantially the ruling made in Paragraph II of the main opinion, but that paragraph does not fully express my views in the case.