PINE et al. v. STATE INDUSTRIAL COMMISSION et al.

No. 15064—Opinion Filed Oct. 7, 1924.

(Syllabus.)

1. **Master and Servant—Workmen's Compensation Law—Industrial Commission—Jurisdiction of Appeals.**

The State Industrial Commission is a judicial tribunal created by the Legislature under authority of section 1 of art. 7 of the state Constitution, and by virtue of section 2 of said art. 7, the Supreme Court has appellate jurisdiction to review its judgments and awards.

2. **Courts—Supreme Court—Appellate Jurisdiction—Review of Facts.**

The appellate jurisdiction over the judgments of inferior judicial tribunals given the Supreme Court by the state Constitution includes the power and duty to reverse such judgments when based upon substantial and prejudicial errors appearing in the record, and it is such an error for any judicial tribunal to render judgment contrary to the clear weight of the evidence unless supported by the verdict of a jury in an action at law or by the findings of the court in such case which the parties, by agreement, have accepted in lieu of the verdict of a jury.

3. **Same—Constitutional Law—Invalidity of Statute Restricting Review of Awards of Industrial Commission.**

The Legislature has no power to abate or restrict the appellate jurisdiction of the Supreme Court given it by the Constitution, and therefore section 7297, Comp. Stat. 1921, in so far as it attempts to prevent the Supreme Court from reviewing the decision of the Industrial Commission upon questions of fact, contravenes the provisions of section 2 of art. 7 of the Constitution and is void.

4. **Master and Servant—Workmen's Compensation Law — Appeal — Review of Facts.**

Upon appeal from a judgment and award of the State Industrial Commission, the Supreme Court, when the question is properly presented, will review the evidence and thereupon reverse the decision of the Industrial Commission upon questions of fact in event same appears to be clearly contrary to the weight of the evidence.

Appeal from Award of Industrial Commission.

Action by R. D. Pine and another to review award of workman's compensation to W. M. Michaels. Reversed and remanded for further proceedings.

Hiatt & Hannigan, for petitioners.

George Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for respondents.

LYDICK, J. Upon a hearing which, in the language of the Industrial Commission, was "to review award and grant further compensation," had on September 17, 1923, under authority of section 7296, Comp. Stat. 1921, the State Industrial Commission made an award finding that Willis Milton Michaels, employe and claimant, had on January 25, 1920, more than three years prior to the date of the hearing, sustained an accidental injury causing the permanent total loss of his left foot, and granting him compensation accordingly. Pine & Buzzard, a copartnership, and employer, against whom the award was made, appealed to this court.

The first assignment of error is that the commission's finding of fact that the claimant had sustained a total loss of the use of his left foot is contrary to the clear weight of the evidence. The claimant and his physician testified to such state of facts and there is some evidence which, if given weight, supports this finding. It appears from the testimony of witnesses produced by the respondent, and admissions wrought from plaintiff's witnesses on cross-examination, that these statements of claimant and his witnesses are not true. From a clear preponderance of all the evidence, we are led to the irresistible conclusion that the true facts in relation to the condition of the claimant's foot and his ability to use the same are substantially as follows:

The claimant has ankylosis of the left ankle joint, producing a stiffness of the ankle joint, but not of the toes, and only partially restricting voluntary movement of the toes. The claimant is required to wear an elevated shoe heel on the shoe of his left foot, but this elevation is only three-eighths of an inch. He stands with the entire weight of his body on his left foot with his heel resting on about a three-inch shoe heel. He is well able to do all such manual labor as does not require too much walking or heavy lifting, and otherwise he is in good health and in sound physical condition. While the injury wholly disabled him for many months, yet within less than a year from the date of the injury, he began working as a garage helper at a wage of $100 per month, that

being approximately the same wages he was receiving when injured. After 60 days his wages were increased to $140 per month, and this he continued to draw for about two years and until near the time of this hearing on review of the original award by the Industrial Commission.

From a consideration of all the evidence, including that which is admitted by the appellant to constitute prima facie proof of the correctness of the commission's finding, we must hold that it appears even beyond a reasonable doubt that the claimant has not sustained a total loss of the use of his left foot, but retains a very substantial use thereof. Attorneys for the Industrial Commission and plaintiff do not in their briefs undertake to say the contrary. They merely assert that section 7297, Comp. Stat. 1921, takes from this court the power to set aside the award on this ground. It must nevertheless be admitted that, notwithstanding the statute referred to, it was the duty of the members of the Industrial Commission, under the law, the same as it is the duty of the judges of the district courts sitting as chancellors in equity, to determine the facts in accordance with the weight of the evidence and not contrary thereto. The Industrial Commission is not authorized to adjudge the facts according to mere prima facie proof and against the weight of evidence even though appeals should be allowed upon questions of law alone. According to the clear weight of evidence, the employers have been illegally adjudged to pay compensation which they do not owe and they have taken every authorized legal step to protect their rights. If, on this appeal, we can consider questions of law alone, then we are confronted with a case where the employers have been done a wrong for which the law has afforded no sufficient remedy.

In section 7294, Comp. Stat. 1921, the Workmen's Compensation Act provides the procedure for trial before the Industrial Commission of causes arising under the act, and there defines the powers and duties of the Industrial Commission in that regard. In that section no reference is made to the right of appeal and, in fact, such right is not even considered in the act until we reach the second succeeding section thereafter. In said section 7294, supra, it is provided that the Industrial Commission itself shall conduct a hearing upon the facts, and when the hearing is closed it shall make or deny an award. However, it is thereupon further provided in the said statute that the Industrial Commission may, at its option, refer the cause to a board of arbitration, which shall hear the evidence and make its written report to the Industrial Commission. Evidently it is intended that the Industrial Commission shall thereupon have the right to review and modify the findings of the board of arbitrators, because it is recited in said section that—

"The decision of the Commission shall be final as to all questions of fact, and except as provided in section 13 (7297) of this article as to all questions of law."

Still, in this section, and nowhere antecedent thereto in the entire act, do we find discussed the subject of appeal to the Supreme Court. It might, therefore, with at least some degree of reasoning be supposed that by the quoted words the lawmakers merely intended to provide that the decree of the Industrial Commission, in reviewing the award made by the arbitrators, should be final as against any contrary finding by the arbitrators, and to further mean that the decision of the Industrial Commission, in all trials before it, should constitute such a final order as must exist under the law before an appeal could be perfected therefrom to the Supreme Court.

The Supreme Court of the state of Rhode Island had occasion to consider a somewhat similar statute in the case of In re Pautucket, 89 Atl. 695, and followed the line of reasoning which we have above suggested. In that case the court said:

"It is also urged that said chapter 896 is in conflict with section 1 of article 12 of the amendments to the Constitution. The language of the act to which this criticism is directed is: 'The decree of said court (the superior court) confirming said decision shall be final and binding.' This, it is claimed, purports to deprive the Supreme Court of its 'final, revisory and appellate jurisdiction' conferred by section 1 of article 12 of the amendments.

"The word 'final' used in connection with a decree or judgment may bear either one of two meanings. It may refer to the termination of the litigation in the court referred to, subject to appeal or other review, or it may refer to exemption from review by a superior tribunal. It is an elementary principle of construction that, to hold a statute constitutional, a court will go to the limits of reasonable construction; that, when two constructions are open, both reasonable, that will be adopted which sustains the statute rather than that which will annul it.

"The clause under consideration must be construed to mean that the decree is final in the superior court, but subject to revision by the Supreme Court."

This theory is given much support by reference to the second succeeding section in the act, to wit, section 7297, where provis-

ion is made for appeal to the Supreme Court. By this section it is clearly provided that the award or decision of the commission shall not be final in event an appeal is perfected to the Supreme Court, for there the Legislature wrote these words:

"The award or decision of the commission shall be final and conclusive upon all questions within its jurisdiction between the parties, unless within thirty days after a copy of such award or decision has been sent by said commission to the parties affected, an action is commenced in the Supreme Court of the state to review such award or decision."

In said section 7297, in relation to the consideration of appeals in the Supreme Court, it is provided that:

"Such actions shall be subject to the law and practice applicable to other civil actions cognizable in said court."

Now, we observe that this language does not merely make applicable the practice and procedure had in the Supreme Court in other cases. The language is much broader than that. By these words it is provided that the substantive law relative to the consideration of the merits of the case shall be applicable here as it is in other cases determined by the Supreme Court. It can, therefore, be contended with some degree of reasoning that the Legislature intended that the Supreme Court, in exercising its constitutional right of reviewing the award of the Industrial Commission, shall determine whether the Industrial Commission committed error in its findings of fact as well as its conclusions of law, and that the Supreme Court, on such appeal, should determine the existence of such error according to the law applicable for the exercise of the same duty in regard to similar cases from other tribunals brought before the Supreme Court on appeal. We have heretofore otherwise interpreted these statutes. If the act of the Legislature be given such an interpretation as to restrict appeals to questions of law, does it contravene the provisions of the Constitution granting unto the Supreme Court appellate jurisdiction in such case?

The Industrial Commission is a judicial commission, and the Constitution confers upon the Supreme Court appellate jurisdiction to review its decisions.

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law." Article 7, sec. 1, Okla. State Constitution.

It was by authority of this provision of our organic law that the Legislature created the Industrial Commission, giving it judicial power, and it has always been recognized by this court as a judicial tribunal. See Tidal Ref. Co. v. Tivis, 91 Okla. 189, 217 Pac. 163; Western Indemnity Co. v. State Ind. Comm., 96 Okla. 100, 219 Pac. 147; Western Metal Sup. Co. v. Pillsbury et al., 172 Cal. 407, 156 Pac. 491, 1917-E, Ann. Cas. 390.

"The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law." Article 7, sec. 2, Okla. State Constitution.

It is true that the Legislature has enacted a statute conferring upon the Supreme Court jurisdiction to review on appeal the award made by the Industrial Commission, but that act is of mere idle consequence, because this court is given that power by the Constitution, which created the Legislature. See In re Jessup's Estate (Cal.) 22 Pac. 1028. The Legislature, by passing an act attempting to confer upon this court power which it already had, cannot thereby acquire for itself power not given it by the Constitution to restrict the power of this court in the exercise of appellate jurisdiction given it by the Constitution itself. It must, therefore, clearly appear that in the case at bar this court is exercising the jurisdiction acquired from the Constitution itself, and that power cannot be limited by the Legislature. If we have the power and the duty, under the Constitution, of reviewing the commission's award and reversing its decision when made against the clear weight of the evidence, the Legislature can neither take away that power nor relieve us of that duty.

The Constitution of the state of Minnesota, in similar language, provided that its Supreme Court should have appellate jurisdiction in all cases, both in law and equity, and in State v. Webber, 37 N. W. 949, the Supreme Court of that state said:

"This provision has been generally understood to mean that, in all judicial proceedings, the judgment which finally determines the rights of the parties is subject to review by this court, and we so hold."

In the case of In re Jessup's Estate (Cal.) 22 Pac. 1028, it is said:

"The term '[appellate] jurisdiction' has a well-defined and well-understood meaning." It "embraces the right to review the final judgments of the courts of original jurisdiction—the right, in other words, to reverse, affirm, or modify them, and to enforce by

some appropriate mandatory process the judgment of the appellate tribunal."

The appellate jurisdiction conferred upon this court in general and unrestricted terms by the Constitution will, in the language of Callahan v. Judd, 23 Wis. 348—

"be construed as vesting such power as the courts under the English and American system of jurisprudence had always exercised in that class of actions."

The Court of Errors and Appeals, that being the court of last resort in the state of New Jersey, said in the case of Harris et al. v. Vandereer's Ex'r, 21 N. J. Ed. 424:

"The phrase 'as heretofore' in article 6, sec. 1, of the Constitution, if descriptive of the jurisdiction of this court, has no important significance. as the jurisdictions of all the constitutional courts, by necessary intendment, are established as they existed antecedently to the date of the Constitution."

This rule was re-affirmed in that state in the case of Central R. R. Co. v. Tunison, 55 N. J. L. Rep. 561, where the court said that:

"The circuit courts of this state are constitutional courts. and are unassailable by legislation in the jurisdiction which they exercised at the adoption of the Constitution."

Under this system of jurisprudence, the appellate courts of last resort in the states of the Union had the right and power, and in fact owed the duty, except when otherwise provided by or under the authority of constitutional law, to reverse a judgment if the inferior court committed error in rendering the same. This rule applied not only to causes in equity, ecclesiastical and admiralty jurisdiction, but equally to causes in courts of law, but it must be observed that it was not error according to that system of jurisprudence for an inferior court of law to render a judgment upon a common-law jury's verdict merely because such verdict was contrary to the weight of the evidence. However, it was reversible error for any other judicial tribunal to render a judgment contrary to the weight of the evidence. The basic law was that by which it was determined whether it was error for the trial court in a particular case to render judgment against the weight of the evidence. If it was error, the appellate court would reverse it; if not error, the appellate court would affirm it. It was error in all cases not based on a common-law jury's verdict, and so it was often held that the rule applied to the judgment of a court of law where the parties, although entitled to a jury, had waived the same. This rule was recognized by the framers of our state Constitution because they thought it necessary to otherwise

provide as to the judgments of courts of law where a jury was waived by the parties entitled thereto. See article 7, sec. 2, state Constitution. No such exception is written into our Constitution broad enough by any possible interpretation to cover cases before the State Industrial Commission.

At the time of the adoption of our state Constitution we had a Supreme Court which, as an appellate court in civil cases, corresponded most closely to this court as it now exists under the state Constitution. Therefore, by authority of Harris v. Vanderveer, supra, we must hold that the framers of our Constitution intended that the appellate jurisdiction thus conferred by general and unrestricted terms upon the Supreme Court of the state should include the power as it then existed in the territorial Supreme Court "antecedently to the date of the Constitution." This rule is most clearly applicable here because the Constitution extended into effect in the new state all statutes of the territory regulating the Supreme Court except in so far as they might be contrary to the new state Constitution. On the point under consideration there is no conflict. One of such statutes thus extended into effect is that the common law should be in force in aid of the statutes. Now, under such statutes the evidence is brought before the Supreme Court by case-made, and the Supreme Court is authorized to reverse, vacate, or modify the judgment or order of the inferior court "for errors appearing in the record." The statutes then contained no restrictions as to what errors were included, and the only one recognized was that the error should be a prejudicial one. If the judgment be one in an action at law and that judgment be based upon the verdict of a common-law jury, or upon the findings of the judge substituted therefor by section 20 of art. 7 of the state constitution, there does not appear upon the record an error merely because the verdict of the jury is contrary to the clear weight of the evidence. This is true because under the common law and our statutes here in force it was the duty of the trial court to render judgment on such verdict, if it met with the approval of its conscience, although contrary to the weight of the evidence. Hence, under our statutes the Supreme Court could not reverse a judgment in an action at law merely on account of its being contrary to the weight of the evidence because the rendition of such judgment by the trial court was not error.

Under the common law such proceedings for reviewing an action at law were had by writ of error. That writ was abolished, al-

though there was imposed upon the appellate court the same limitation as to reviewing the evidence as existed under that writ, but no further restriction was imposed and no other limitation already existed. The restriction on appellate power is, therefore, based only upon the common law, which in all actions at law known to the common law made it impossible on review in an appellate court to disturb the verdict of a jury merely because it was contrary to the clear weight of the evidence. Where no constitutional restriction exists and except where the common law under these theories restricts the power of the appellate court, there is no rule to prevent the appellate court from reviewing and weighing the evidence, and in fact such is its duty. This was the system of jurisprudence in effect in the territory of Oklahoma, and extended into force by our Constitution. It is the general American system of jurisprudence except where modified by the Constitution of a state.

It clearly appears, therefore, that under the appellate jurisdiction held by the Supreme Court of the territory at the time of the adoption of our state Constitution, the Supreme Court had the power and owed the duty to reverse any judgment or order made by an inferior judicial tribunal and not based upon a common-law jury's verdict, if it were contrary to the clear weight of evidence, because the rendition of such a judgment or the making of such order by the inferior tribunal would have been error. Therefore, if the Industrial Commission had been in existence in territorial days, the Supreme Court of the territory, upon an appeal to it from the award of the Industrial Commission, authorized in the broad language contained in our state Constitution, would have held it to be reversible error if it found such award contrary to the clear weight of the evidence.

In article 2, sec. 19, of our state Constitution, it is provided:

"The right of trial by jury shall be and remain inviolate. * * *"

This provision of our Bill of Rights is uniformly interpreted to provide for the retention of right of trial by jury only where the right of jury trial existed at common law.

The cases submitted by statute to the jurisdiction of the Industrial Commission are in effect cases at law. The theory that the Constitution provides for jury trial only in causes of action recognized by the common law was absolutely necessary in order to hold valid the Workmen's Compensation Law providing for a determination of such matters without a jury and by a judicial tribunal known in this state as the Industrial Commission. The theory of the courts is that the cause of action created by the Workmen's Compensation Law was wholly unknown to the common law and, therefore, under the common law and under this provision of constitutional law above quoted the right of the jury trial is not required. Now, it follows as clearly as night follows day that if the common-law requirement of a jury trial is not applicable to trials before the State Industrial Commission on causes of action arising under the Workmen's Compensation Law, that, therefore, the common-law restriction upon an appellate court from disturbing the judgment of a court based upon a common-law jury verdict cannot apply to an appellate court in reviewing the judgment and award of the Industrial Commission not based on a common-law jury's verdict and operating contrary to and in defiance of all common-law rights. That such is the theory of this court in holding our Workmen's Compensation Law valid appears clearly from the original case in this court of Adams v. Iten Biscuit Co., 63 Okla. 52, 162 Pac. 938. Such a theory forms the basis of reasoning on this point in the various courts of last resort in the different states of the Union which have held the Workmen's Compensation Law to be constitutional. See 1912-B., Ann. Cas. 156. And why should we not thus interpret the law? There are many reasons wholly inapplicable to an Industrial Commission which will support the common-law rule giving weight to the verdict of a jury, which is the voice of twelve and in whose selection the parties to the action have much to do.

The Industrial Commission renders awards for the distribution of more moneys in a year than many of the district courts combined, and unless reversed upon appeal to this court its awards must stand as final. The chief purpose in abrogating the right of trial by jury in Workmen's Compensation cases and the submission of the same to the Industrial Commission is to obtain quick and inexpensive justice and to avoid the delay and inconvenient methods incident to general judicial procedure. Nevertheless, an appeal is provided to this court from all the awards made by the commission, and in every place where the question is raised we are required to read the evidence in order to determine whether the evidence is sufficient to make prima facie proof. It requires no more time or effort on our part after studying the record, to decide whether the award is against the clear weight of the evidence than to determine whether prima facie proof appears

therein. Therefore, the statute precluding us from weighing the evidence does not tend to speed along the final determination of the case, and the abrogation of this statute, therefore, would create no delay and incur no further expense. It seems to have been universally decreed that the rush of Twentieth Century commerce demands the abrogation of the right of trial by jury in these cases because of the delay and expense incident thereto, but no demands for quickened justice will be served more speedily or more equitably by preventing the Supreme Court of a state from weighing the evidence upon which the Industrial Commission's award is based.

While we are bearing in mind that an inferior court of law does not err but in fact does its duty under the common law in rendering a judgment upon a common-law jury's verdict contrary to the weight of the evidence, nevertheless it is error for the Industrial Commission to make its award contrary to the weight of the evidence. We affirm the common-law court's judgment in such case because, under the common law. it did not err, but there is no common law, constitutional or statutory law justifying an Industrial Commission in making an award contrary to the weight of the evidence, and in fact a litigant has the natural and inherent right to demand that the commission should not do so. We know of no more reason why an award of the Industrial Commission, illegal and unjust because made contrary to the clear weight of the evidence. should be permitted to stand than should a decree of a court of equity for the same reasons illegal and unjust.

The whole subject of Workmen's Compensation Law has been created, and the laws in relation thereto have been enacted, entirely since the adoption of our state Constitution. We, therefore, had no precedents in existence at the time our Constitution was written from which we can quote as being squarely in point and indicative of the thoughts in the minds of the framers of our Constitution when they conferred the appellate jurisdiction on this court. It is of little avail, indeed, if any, that we can turn to the decisions of the various state courts rendered since that time as influential precedents here.

Our whole theory in this opinion is bottomed on the fact that in this state we acquire our right to review upon appeal the award of the Industrial Commission from the direct grant of power contained in the Constitution itself, with no authority given the Legislature to limit that power to any particular class of cases. Our Legislature has no power to preclude an appeal to this court from an award of the Industrial Commission. Therefore, the decision of no other state Supreme Court can be in point or in any manner influential here, if in such state the appellate jurisdiction of the Supreme Court over an award of the Industrial Commission is dependent upon a grant of power unto it by an act of the Legislature, for it goes without saying that in such event the Legislature, in granting such power to the appellate court, could restrict it to such a degree as it might deem proper. Our whole theory in this opinion is further bottomed on the fact that the Constitution of this state grants to this court unrestricted appellate jurisdiction in cases consigned to it for review and that the Legislature, by the Constitution, is not given authority to limit our judicial power on review to questions of law alone or to otherwise restrict us in the exercise of unrestricted appellate jurisdiction conferred upon us by the Constitution. It, therefore, clearly appears that the decisions of no other state could be in point or persuasive if in that state the Constitution itself or the Legislature, under authority of the Constitution, has limited the appellate court, upon review, to questions of law alone.

We need not turn to England for a precedent, because the whole framework of the English law and the tribunals which determine the causes therein arising are radically different from ours. We will note in passing, however, that in Australia, an English province, an appeal lies to the Supreme Court from awards in workmen's compensation cases on all points both of law and fact. See 1916-A, L. R. A. 180.

The only decision of the Supreme Courts of the other states which could be in point or aid us in determining the constitutionality of the statute under consideration and which would preclude us from weighing the evidence supporting the award of the commission would be the decisions of those states which, like this state, have an unrestricted grant of constitutional authority to the Supreme Court to review generally the award of an Industrial Commission. We have made a rather extended search of those authorities and are unable to find that as yet in those states the constitutionality of such a statute has been considered. This is likely due to the fact that the whole framework of the Workmen's Compensation Law is yet so new as to be yet in the process of development. There are, nevertheless, numerous cases not involving the compensation law but which,

however, squarely support the theories which we have herein advanced. We desire to briefly review some of those numerous decisions.

The common-law restriction upon the power of the appellate court to review the facts, when the judgment was based upon a common-law jury's verdict, did not apply to a court unless: First, it was a court known to the common law and to which, under the law, a writ of error would issue; second, even to such a court the rule did not apply unless the proceedings in such court were "according to the course of the common law." 3 C. J. 308, 17-E. See, also, Richmond v. Henderson (W. Va.) 37 S. E. 659.

Each of these provisions clearly excludes the award of the Industrial Commission from the operation of this common-law rule because neither the Workmen's Compensation Law nor the Industrial Commission was known to the common law, and the proceedings before the Industrial Commission are not "according to the course of the common law."

The state of West Virginia had a Constitution which provided that in the court of the justice of the peace the parties should be entitled to a jury trial, and that appeal would be from that court to the circuit court, where the judgment and proceedings of the justice court should be reviewed. But it was further provided in the Constitution that:

"No fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law."

In the case of Richmond v. Henderson, supra, it was urged that since the common law prevented an appellate court from weighing the evidence on which the verdict of a jury was based, the circuit court on an appeal from such justice court was without power to review the facts. The Supreme Court of West Virginia applied the rules which we have announced. It said that the justice court, as one exercising jurisdiction in civil cases, was unknown to the common law, and such common-law restriction could, therefore, not apply. It said that the common-law limitation was inapplicable because it applied only to the jury known to the common law, which, in the language of the Supreme Court of the United States in the case of Traction Co. v. Hof, 174 U. S. 13, 43 L. Ed. 873, is "a jury of twelve men" in a trial had "in the presence and under the superintendence of a judge empowered to instruct them on the law, and advise them on the facts and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evi-

dence." The jury of six in the justice court not being such a jury, the court said that the appellate court was not limited to a review of the law, but had the power and owed the duty to review the facts. In other words, the circuit court was not by common law prevented from setting aside such verdict merely because it was contrary to the weight of evidence. On the other hand, it was his duty in such case to set aside such verdict, and for his error in refusing so to do, the case on appeal should be reversed.

"It is quite beyond the power of the Legislature, even if it so intended, to abate by one jot or tittle the constitutionally conferred jurisdiction of this court." State v. Vallins (Mo.) 41 S. W. 887.

Rhode Island had a Constitution which, in article 12, provided that "the Supreme Court shall have final revisory and appellate jurisdiction **upon all questions of law and equity.**" Our Constitution says, "to all civil cases at law and in equity"—the same identical effect. The Legislature enacted a statute which provided that the decree of the superior court should be final and binding, and it was, therefore, urged that the Supreme Court on appeal could not disturb the same. The Supreme Court said that if "the act purported to make the decree of the superior court final and beyond review, this court would nevertheless, by virtue of article 12 (Constitution) have power to review the decision by proper proceedings."

The state of Wisconsin had a constitutional provision conferring upon the circuit court original jurisdiction in equity cases. The Legislature enacted a statute requiring the circuit court to submit issues of fact in an equity case to a jury and required that to its verdict there be given the same force and effect as in common-law actions. This in effect would prevent the circuit court, at the conclusion of the trial, and the Supreme Court on appeal, from setting aside the verdict merely because it was clearly contrary to the weight of the evidence. This is true because under the common-law it is not reversible error for a jury to return a verdict contrary to the weight of the evidence.

In the case of Callahan v. Judd, 23 Wis. 343, the court said at page 348:

"I think the act invalid, and my reasons are briefly as follows: The power to decide questions of fact, in equity cases, belonged to the chancellor, just as much as the power to decide questions of law. It was an inherent part and one of the constituent elements of equitable jurisdiction. If, therefore, it shall appear that by the Constitution the equitable jurisdiction existing in this state is vested in the courts, I think it will

necessarily follow that it would not be competent for the Legislature to divest them of any part of it, and confer it upon juries. If they can do so as to a part, I do not see why they may not as to the whole. If they can say that in an equity case no court shall render any judgment except upon the verdict of a jury on questions of fact, I can see no reason why they may not say that the jury shall also be allowed to decide the questions of law."

The court said the act tended **"to disturb the constituent elements of judicial power."** A splendid illustration of the inapplicability of decisions of states with different Constitutions and differently constructed appellate courts is found by reference to the case of Chicago & A. R. Co. v. Fisher, 31 N. E. 406. The state of Illinois had a statute prohibiting the Supreme Court from reviewing the facts in a certain class of appellate cases. In this case it was urged that same was invalid because it restricted the inherent power of the Supreme Court in the exercise of its appellate jurisdiction. In the Constitution of Illinois then in effect, however radically different from ours, it appears that the Supreme Court there was, by the Constitution, given appellate jurisdiction only "in criminal cases and cases in which either a franchise, freehold, or the validity of a statute is involved." For other appellate jurisdiction the Supreme Court was dependent upon the acts of the Legislature. The case considered was not one in which it had jurisdiction by virtue of the Constitution, but for its jurisdiction it was dependent upon the acts of the Legislature, and, of course, the Legislature had the power to extend jurisdiction in such cases only to errors of law and not of fact, if it desired so to do, and that it did. By analogy the case well supports the conclusions reached in the Wisconsin, West Virginia, and Rhode Island cases to which we have referred, and the New Jersey case hereafter considered. Our Constitution is different. Why? Just because the men who wrote it intended to give the Supreme Court of Oklahoma power not granted by the restricted provisions of such Constitution as this of the state of Illinois.

In the state of New Jersey the Constitution provided for an appeal to the Supreme Court from all final judgments of certain inferior tribunals. Thereafter the Legislature passed a law which provided that on such appeals the Supreme Court should not reverse the order of the commissioners unless there was a total lack of evidence to support such order. This is almost exactly the question we are now considering. In the case of Public Service Gas Co. v. Board of Public Utility Com'rs, 87 Atl. 651, the Supreme Court of New Jersey held this act limiting the power of the court on appeal to be unconstitutional and said:

"Our original jurisdiction as it has always existed is not and cannot be affected by the Legislature. * * * Under section 38 we are given jurisdiction to set aside the order of the commissioners, when it clearly appears that there was no evidence before the board to reasonably support such order, or that the same was without the jurisdiction of the board. On its face this section confers jurisdiction upon this court, but a jurisdiction of a limited character, only to be exercised when it clearly appears that there is no evidence before the board to support their order, or where the order is without their jurisdiction. If this language is taken literally, we should be powerless in any case within the jurisdiction of the board to set aside its order if there was any evidence to support it, no matter how overwhelming the evidence to the contrary might be. It is needless to say that such a literal construction of section 38 would bring it into conflict with our Constitution. It needs no act of the Legislature to confer on us the power to review the action of an inferior tribunal, and the Legislature cannot limit us in the exercise of our ancient prerogative."

Following the American system of jurisprudence, we hold it to be our duty to protect the people from legislative invasion of our constitutional rights. The employers who build the industries of the state and the laborers who toil operate under organic laws of their own sovereign state which guarantee to them the right to have the Supreme Court, upon appeal, review the award of the Industrial Commission, and upon their complaint to reverse, vacate, or modify such award where it is based upon "errors appearing in the record." No more to the Legislature than to a litigant does the Constitution give the power to abrogate that right, and for the benefit of the litigants we must perform the duty by the Constitution imposed upon us. The provisions of the statute under consideration, which deprive us of the right to reverse the award of the Industrial Commission when it commits errors of law by rendering judgment against the clear weight of the evidence, contravene the clear provisions of the state Constitution and are void.

Upon such appeals this court will measure the sufficiency of the evidence in support of an award of the Industrial Commission according to the same rules by which we measure the sufficiency of the evidence on which is based the judgment of any other judicial tribunal not supported by the verdict of a jury, and will reverse such award when, but

only when, it appears contrary to the clear weight of the evidence. The former opinions of this court to the contrary were rendered without consideration of the constitutionality of the portion of the statute here declared void, and are therefore expressly overruled.

Respondents complain that the Industrial Commission did not allow them credit for all moneys which, by the written receipt of the claimant, it appeared they had paid to him. Such receipt is only prima facie proof of the amount paid and may be overcome by parol evidence. Upon the evidence appearing in the record, we are not willing to disturb the commission's finding on that point.

Respondents also complain that the Industrial Commission was without jurisdiction because under the evidence it appears that they did not have the number of employes required by section 7285, Comp. Stat. 1921, in effect at the time of the injury, to give the Industrial Commission jurisdiction over the subject-matter. In this the respondents are correct. Without jurisdiction over the subject-matter, the award made by a judicial tribunal is void. This error can never be waived and can be raised at any time and anywhere proceedings are had to enforce the judgment. If, upon a rehearing herein, it is still made to appear that the employer at the time of the injury did not have sufficient workmen required under said section of the statute to give the Industrial Commission jurisdiction, then the Industrial Commission must dismiss the action.

For reasons stated, the award of the Industrial Commission is reversed, and the cause is remanded to the Industrial Commission for further proceedings in accordance with the rules announced in this opinion.

NICHOLSON, BRANSON, MASON, WARREN, and GORDON, JJ., concur.

McNEILL, C. J., and JOHNSON, J., dissent.