THE STATE *ex informatione* CROW, *Attorney-General*, v. VALLINS.

In Banc, July 6, 1897.

1. **Pleading:** QUO WARRANTO. In a *quo warranto* proceeding on information of the attorney-general against one who is exercising the duties of the office of chief of police, being an *ex officio* information on behalf of the State, it is not necessary to specify the grounds on which the proceeding is based; all that is required to put him to his answer is a charge in general language that the respondent has usurped and unlawfully exercises the functions of the office.

2. ———: OUSTER FROM OFFICE: PLEA IN PERSON. In a *quo warranto* proceeding to oust respondent from the office of chief of police of Kansas City on the ground that he is not a citizen of this State, a plea that this court has no jurisdiction in the premises because the board of police commissioners are invested by law with exclusive jurisdiction, must, if to be governed by the rules of common law, be pleaded *in person*, and must conclude "by praying judgment if the court will take further cognizance of the suit."

3. **Jurisdiction of Supreme Court and Police Commissioners.** The Supreme Court acquires its jurisdiction, in a *quo warranto* proceeding to remove a police officer, from the Constitution, and any act of the legislature that undertakes to confer on a board of police commissioners exclusive jurisdiction of such matters is invalid and that far void. The words "exclusive jurisdiction" as used in the charter of Kansas City in reference to the removal of a policeman by the board of police commissioners, refers only to the jurisdiction of the board for his removal for misbehavior or dereliction of duty, after he has entered on his three years' term.

4. Distinction Between the Words "Policemen" and "Officers of Police." The word "policeman" separate and apart to itself, is a generic term, and means any person employed in police service. But as used in the ordinances of Kansas City the words "policemen" and "officers of police" do not refer to the same officer, the former words being used to designate patrolmen and other men in police ranks.

5. "Probationary" Officer as used in the Charter: ILLEGAL APPOINTMENT. The words "probationary policemen" as used in the charter of Kansas City do not mean "officers of police," and therefore, applying the rule that the expression of one thing is the exclusion of another, the charter provision that requires the appointment of policemen for the probationary period of six months does not apply to police officers, and therefore the appointment of the respondent to be chief of police for a probationary period of six months was null in law and the same as if it had not been made.

6. Quo Warranto: DIFFERENT DEFENSES: PLEADING. In a *quo warranto* proceeding, being a civil action, only one answer is allowable, and that must contain all the defenses respondent has. His plea to the jurisdiction of this court having been held insufficient, he will not be permitted to answer over on the merits.

PER BARCLAY, C. J., DISSENTING.

7. Probationary Appointment: ELIGIBILITY: CITIZENSHIP. The charter of Kansas City does not prohibit the appointment of the police chief for a "probationary" term of six months. But it being admitted that the respondent had not resided within this State for one year next preceeding his appointment, he should be ousted because under the Constitution he was not eligible to hold office, either by election or appointment.

8. Practice: PLEA TO JURISDICTION: ANSWER ON THE MERITS. Respondent's plea to the jurisdiction having been held insufficient, his request to plead to the merits should be granted provided he does so *instanter*.

*Quo Warranto.*

JUDGMENT OF OUSTER AWARDED.

*Frank Hagerman* for respondent.

(1) By the provisions of the Constitution and these sections of the charter, it will be observed that the Governor is the conservator of peace, but that in Kansas City the entire police power is vested abso-

lutely in the commissioners, as the local representatives of the Governor, and the power to appoint policemen is, in the express language of the charter, "to enable said board to perform the duties imposed upon them." (2) A close reading of the section in question must carry the conviction that the purpose of the framers thereof was to vest in the board powers of a judicial nature and to give them exclusive jurisdiction in the premises. *Lenox v. Harrison*, 88 Mo. 491; *Com v. Leech*, 44 Pa. St. 332; *State ex rel. v. Moehlenkamp*, 133 Mo. 135; *Railroad v. Young*, 96 Mo. 39; *State v. Cockrell*, 2 Rich. Law (S. C.), 6; *Sellick v. Common Council*, 40 Conn. 359; *People v. Fitzgerald*, 41 Mich. 2; *Alter v. Simpson*, 46 Mich. 138; *People v. Hill*, 34 How. Pr. 336; *Com. v. Baxter*, 35 Pa. St. 263. (3) The probationary term being but an employment *quo warranto* will not lie. (4) There can be no question as to the fact, it being conceded by the motion that the relation of respondent to Kansas City was that of employee. The language of the plea to the jurisdiction is that the board employed respondent for a probationary period with the right, in its discretion, to discontinue his services at any time. *State ex rel. v. Johnson*, 123 Mo. 43; *State ex rel. v. Bus*, 36 S. W. Rep. 636; *State v. Wilmington*, 3 Har. 294; *People ex rel. v. Cain*, 47 N. W. Rep. 484; *Trainar v. Board of Auditors*, 50 N. W. Rep. 809; *State ex rel. v. Champlin*, 2 Bailey, 220; *Commonwealth v. Dearborn*, 15 Mass. 125.

*Edward C. Crow*, Attorney-General, and *Daniel Brown* for relator.

(1) The facts admitted are sufficient to show a complete user by respondent of the office of chief of police, thereby making him *de facto* chief of police.

(2) Respondent may be *de facto* chief of police, although ineligible and in wrongful possession of the office. *Harbaugh v. Winson*, 38 Mo. 327; 5 Am. and Eng. Ency. of Law, 96; 19 *Ib.* 394; Throop on Public Officers, sec. 636. (3) The only proper remedy for the removal of an officer on account of ineligibility is a proceeding by *quo warranto*. R. S. 1889; sec. 7390; 2 Spelling, Extr. Relief, secs. 1765, 1766; 19 Am. and Eng. Ency. of Law, 666; Mechem's Public Offices, sec. 478. (4) Even though the charter provides a way to try such case and gives the board of commissioners jurisdiction as contended by respondent, yet it could not be "exclusively" exercised by the board in the face of the constitutional provisions conferring the right also on the Supreme Court. Even though permitted, it is necessarily restricted. (5) The proceedings, whether before the board of commissioners, Supreme Court, or any other tribunal having jurisdiction, is one in the nature of a *quo warranto*. (6) The respondent is an officer of the city as well as of the State, and can not by any possible fine distinction or elasticity of construction be termed a servant (other than public servant) agent or employee. The charter defines his character as an officer. The fact that he is still occupying his probationary term of six months certainly does not render him an agent, servant or employee, but he is the chief of police, *de facto* so, but for all the purposes of this case, a city officer, and therefore subject to the jurisdiction of the court. (7) The charter adopted by the city of Kansas City in April, 1889, was obtained by virtue of the authority of the Constitution. Its full authority is derived therefrom, and had the people of that city so desired they could not have ordained full authority to themselves to try *quo warranto* proceedings, or other remedial writs, such matters being especially mentioned as subject to the consideration and

jurisdiction of the Supreme Court. It was not the intention of the people of Kansas City, when they adopted the charter of 1889, to give the board of police commissioners judicial authority and empower them to consider and determine proceedings instituted for the purpose of testing the eligibility of a police officer.

*Frank Hagerman* for respondent in reply.

(1) The word "policeman" includes any one of the body of police, whether he be officer of police or patrolman. Sutherland, Stat. Const. 306; Anderson's Law Dic. 737; R. S. 1889, sec. 1570; *Warren v. Asphalt Co.*, 115 Mo. 572. (2) The Constitution vests jurisdiction in *quo warranto* in the Supreme Court, but it is the jurisdiction only as it existed at common law. *State ex rel. v. Wilson*, 30 Kan. 661.

SHERWOOD, J.—An information in the nature of *quo warranto* has been filed in this court by the attorney-general, directed against Thomas N. Vallins, respondent herein, its purpose being to inquire *quo warranto* said Vallins entered into, used and exercised the office of "chief of police" of the city of Kansas.

The information undertakes to specify the grounds upon which it proceeds; but of course this is wholly unnecessary, since in these *ex officio* informations the State is under no obligation to show anything on its part; a charge in general language that the respondent has intruded into, usurped and unlawfully exercised the functions of a certain office is all that is required to put him to his answer. Mechem's Pub. Off., sec. 491; Tomlins' Law Dic. Tit. Quo. War. 281; *State ex inf. Dearing, Pros. Att'y, v. Berkeley*, 140 Mo. 184, *ante*.

In this case, to the information, the respondent has interposed a dilatory plea, to wit, a plea to the jurisdiction of this court, which, omitting caption, is

the following: "Now comes Thomas N. Vallins, and appearing specially and solely for the purpose of this plea, and for no other purpose, respectfully shows that this court had no jurisdiction of his person nor of the controversy attempted to be created by this action, for that, since the 1st day of April, 1897, the board of police commissioners of Kansas City, Missouri, has consisted of William C. Scarritt, Robert L. Gregory and Jas. M. Jones, duly qualified and acting members. Prior to April 8th, 1897, respondent had no official place or employment with Kansas City, Missouri. Upon April 8, 1897, said board of police commissioners did employ respondent as policeman of said city, with the rank of chief of police for the probationary term of six months mentioned in section 22, of article 10, of the charter of Kansas City, with the right reserved on the part of said board, in its discretion, to discontinue his services at any time, which employment has ever since continued, and is still engaged therein; he has not had at any time any other connection with Kansas City, Missouri, as an official or employee. The purpose of the information herein is to attempt to have litigated here a question of fact as to whether respondent has resided in the State of Missouri for a period of one year, and if the fact should be so found, to have this court determine that the employment aforesaid can not be exercised by one who has not resided in the State for one year. This court has not jurisdiction to inquire into any such matters by an original proceeding in *quo warranto*, for an agency and employment of the character mentioned is not a subject of inquiry in such proceedings, and by virtue of law in such cases made and provided, said board of police commissioners is invested with exclusive jurisdiction in the premises; wherefore respondent asks to be dismissed with his costs."

This plea, if to be governed as counsel claim by the rules of the common law, is bad because such a plea is to be pleaded *in person* (*Grant v. Sondes*, 2 Bla. W. R. 1094; *Hunter v. Neck*, 3 M. & G. *loc. cit.* 184; Gil. C. P. 187; 1 Tidd. 637; Stephen, Plead. *461), and must conclude " by praying judgment if the court will take further cognizance of the suit." 1 Tidd. 638.

With reference to that portion of the plea which alleges that " by virtue of law in such cases made and provided, said board of police commissioners is invested with exclusive jurisdiction in the premises," it is sufficient for the present to say, as was in substance and effect said in a recent case, that since this court acquires its jurisdiction from the organic law of this State, it is quite beyond the power of the legislature, even if so intended, to abate by one jot or one tittle the Constitution conferred jurisdiction of this court; and this is true although similar jurisdiction elsewhere be conferred on inferior courts or boards. *State ex inf. Att'y-Gen. v. Equitable L. & Inv. Co.*, not yet reported. ·

The chief point, however, of contention in this cause is to be determined upon an examination of certain sections of the charter of Kansas City, which are as follow:

" Sec. 21.   No person shall be appointed policeman or officer of police who shall have been convicted of any offense, the punishment of which may be confinement in the State penitentiary, or against whom an indictment for any such offense may be pending; nor shall any person be appointed who is not proven to be a citizen of the United States, or who can not read and write the English language, or who does not possess ordinary physical strength and courage.

Vol. 140 mo—34

"Sec. 22. The first employment of policemen shall be for a probationary term of six months; and the board of police may, in its discretion, discontinue their services at any time. Having served six months' probationary service to the satisfaction of the board, such policemen may be appointed for a term of three years, and in case complaint be made against them, they shall be subject to removal only for cause, after a hearing by the board, and said board is hereby invested with exclusive jurisdiction in such matters. Whenever the board is satisfied that any person holding a commission under them is not a proper person to discharge the duties of a police officer, he may be discharged at any time without any complaint having been made against him.

" Sec. 23. Policemen whose term of service shall have expired, and who, during the term of their appointment, shall have faithfully performed their duty, shall, if otherwise qualified, be preferred by the board in making new appointments. The board may, in its discretion, make special provisions for policemen and officers who have grown old in the service, or those crippled while in the discharge of their duty so as to unfit them for active work, either by pension, not to exceed fifty dollars per month, or assigning them to special duty at a proper salary.

"Sec. 24. The board may, as the service requires, appoint officers and patrolmen as follows: A chief of police, at a salary not exceeding four thousand dollars per annum, and he shall not receive any fees or any perquisites; one inspector or chief of detectives, at a salary not exceeding two thousand dollars per annum; a secretary of the board, at a salary not exceeding two thousand dollars per annum; captains not exceeding one for each police district, at a salary not exceeding eighteen hundred dollars per annnum; lieutenants, not

to exceed one for each police district, at a salary not to exceed fifteen hundred dollars per annum; sergeants, not to exceed four for each police district, at a salary not exceeding twelve hundred dollars per annum; a secretary to the chief, at a salary not exceeding twelve hundred dollars per annum; a police surgeon, at a salary not exceeding fifteen hundred dollars per annum, who shall perform such additional duties as may be prescribed by ordinance; police detectives not exceeding one for every fifteen patrolmen, at a salary not exceeding fifteen hundred dollars per annum; patrolmen, not to exceed one to each one thousand inhabitants of the city, the estimate to be taken from the best known sources for obtaining such information, as may be prescribed by ordinance; provided, however, that for extraordinary emergencies the board may raise such additional force as may be deemed necessary in their judgment. The salary of regular patrolmen shall not exceed ninety dollars per month, and that of probationary patrolmen shall not exceed sixty dollars per month. The salaries of all officers and patrolmen of the police force shall be fixed from time to time by the board of police commissioners, not to exceed, however, the limits herein specified.

"Sec. 25. The officers, patrolmen and all attaches of the department shall be paid monthly as hereinfore provided.

"Sec. 26. The board may, in its discretion, require a bond with security to be approved by the board, of any officer or member of the police, in any reasonable sum, conditioned for the faithful performance of duty, and the proper care and disposition of money or property placed in his charge.

"Sec. 27. Whenever any vacancy shall take place in any grade of officers except the chief, it shall be

filled from the next lower grade, if competent men can be found therein.

"Sec. 32. No officer or policeman shall be allowed to receive any money as a reward or gift for any service he may render, without the consent of the board, and when such consent is obtained twenty per cent of the gross amount thereof shall be paid into the treasury of the police relief association."

The claim has been made on behalf of respondent, both in plea and brief, that inasmuch as the appointment was merely "*probationary*" under the provisions of section 22, article 11 of the charter, therefore respondent did not hold an *office* which proceedings in *quo warranto* could reach.

Let us examine this claim and the provisions of the charter which bear upon it at the same time. Making such examination, it can not escape observation that section 21 heretofore quoted draws a plainly marked distinction between a "policeman" and an "officer of police" by saying: "No person shall be appointed policeman or officer of police,"·etc. It is quite true that the word "policeman" may be used as a generic term, and *when so used* may equally apply to any member of the police force, be his rank and station what it may; but this can only be true when the word "policeman" is used alone as a generic term and as descriptive of the whole police force, officers as well as men, and not when officers and men are carefully segregated from each other in meaning in apt terms of distinctive designation as in the charter now under consideration.

This process of differentiation between officers and men becomes more and more marked as we make progress through other quoted sections of the charter. Thus in secton 22 it is said: "The first employment of policemen shall be for a probationary term of six months; and the board of police may, in its discretion,

discontinue their services at any time.   Having served six months' probationary service to the satisfaction of the board, such policemen may be appointed for a term of three years, and in case complaint be made against them, they shall be subject to removal only for cause, after a hearing by the board, and said board is hereby invested with exclusive jurisdiction in such matters. Whenever the board is satisfied that any person holding a commission under them is not a proper person to discharge the duties of a police officer, he may be discharged at any time without any complaint having been made against him.''

Here "policeman" is again differentiated from "police officer." The former can only be employed at the first for a probationary term of six months, and during that period the board of police may discontinue his services at any time, but having served for the probationary period to the satisfaction of the board, he may be appointed for a term of three years, in which case he can only be removed for cause on complaint made, and after a hearing by the board, which is given exclusive jurisdiction in such matters (which obviously only means and refers to jurisdiction as to the removal of a policeman for misbehavior or dereliction of duty, after he has entered on his three years term.) Not so, however, with a "police officer," as he may be discharged at any time without complaint being made, cause alleged or hearing had.

So, also, in other sections the like distinction between officers and men is kept prominently in view. Thus in section 23 the board are authorized to "make special provision for policemen and officers who have grown old in the service," etc., while only to "*policemen*" whose term of service has expired, etc., is preference to be made by the board in making new appointments.

Section 24 keeps up the line of demarkation aforesaid by providing that "the board may, as the service requires, appoint officers and patrolmen as follows:" Going on to mention a chief of police at a salary not exceeding $4,000, and other officers, and winding up by providing that: "The salary of regular patrolmen shall not exceed ninety dollars per month, and that of *probationary patrolmen* shall not exceed sixty dollars per month. The salaries of all officers and patrolmen of the police force shall be fixed from time to time by the board of police commissioners, not to exceed, however, the limits herein specified." Thus showing not only a distinction between "officers and patrolmen of the police force," but plainly showing that the term *"probationary patrolmen"* manifestly refers to, and can alone refer to, *"policemen"* as previously mentioned in section 22, and not to *officers*, because with regard to them the term "probationary" is nowhere employed or applied. Section 25 keeps in line in this regard with its associate sections, by speaking of "officers and patrolmen," and their monthly pay. Nor is section 26 wanting in distinguishing the two classes, for it speaks of a bond which may be required of "any officer or member of the police." And section 27 continues to show the difference between officers and men, and allows promotions to occur from lower grades, except in case of a vacancy in the office of the chief of police. Finally section 32 lays it down that "no officer or policeman shall be allowed to receive any money," etc. With such plain provisions of the charter before us, it seems impossible to reach any other rational conclusion than that the charter-framers made, and intentionally made a well defined distinction between officers and policemen, and only required the latter to serve a probationary term. If the framers of the charter did not intend

such a result, then they displayed a singular and sedulous industry to express a meaning which they did not intend to convey. But this would be an impossible supposition. And by thus making the distinction aforesaid in such clearly marked terms, afford opportunity for the application of two canons of construction: One that "affirmative specification excludes implication." Dwarris on Stat. 605; *Ex parte Snyder*, 64 Mo. 58; *State ex rel. v. Laughlin*, 73 Mo. *loc. cit.* 449; the other that the expression of one thing is the exclusion of another. *Maguire v. State Sav. Ass'n*, 62 Mo. 344. Moved by these considerations, we hold that under the charter of Kansas City the board of police was without any power or authority to appoint a chief of police for a probationary term, and this being true, such appointment is null in law and is the same as if it had not been made, and therefore respondent has no standing before this court in the capacity he claims. Consequently there is no merit in his plea. So that it really becomes unnecessary to consider whether respondent is an officer or not, since the charter shows he has not been appointed as pointed out by its provisions, and therefore has no just claim to the office he alleges he is entitled to.

But one point remains to be disposed of; it is this: The assertion is made by counsel for respondent in substance, that inasmuch as proceedings in *quo warranto* are governed here by the common law, that in consequence of this, it was not admissible to plead at the same time to the jurisdiction and also to the merits, and the intimation is given that there are other matters yet held in reserve and to be brought forward in resistance to the information. On this it is enough to say that although the present proceeding is in effect as it was at common law, yet at the same time it is but a *civil action*, as we have often

decided, and being such, there is but one answer allowable in such cases, and that must contain all the defenses the party has, no matter what their nature, whether in abatement or in bar. This has been the rule in this State ever since *Little v. Harrington*, 71 Mo. 390. *Byler v. Jones*, 79 Mo. *loc. cit.* 264; *May v. Burk*, 80 Mo. *loc. cit.* 680; *Young Men's, etc. v Dubach*, 82 Mo. *loc. cit.* 480; *Cohn v. Lehman*, 93 Mo. *loc. cit.* 582.

This being the case, respondent will not be allowed to plead to the information by *piecemeal*, and having failed to plead all his defenses, if he had any others, he must now forego them. Holding the plea to the jurisdiction insufficient, we grant the motion to strike it out, and award judgment of ouster.

Burgess, Macfarlane and Brace, JJ., concur. Gantt, J., also concurs but regards respondent as an officer; Barclay, C. J., and Robinson, J., express their views in a separate opinion.

Barclay, C. J. (*dissenting*).—We do not agree to the ruling that the charter of Kansas City in effect prohibits the board of police commissioners from appointing a chief of police for a term of six months, whether that appointment be "probationary," or be called by any other name. Whatever be the term for which the board may properly appoint a police chief, we think it manifest that the appointee must be qualified by law to take and hold the office. Even if the appointment was correctly made on probation, that would not exempt the appointee from an investigation into his eligibility by a writ of *quo warranto*.

It was held in *State ex rel. Att'y-Gen. v. Bus* (1896) 135 Mo. 325 (36 S. W. Rep. 636) that an appointment as deputy sheriff, merely at the pleasure of the sheriff, was not so transitory in its nature as to remove the deputy from liability to answer a *quo warranto*. To

the same general effect, see *Queen v. Guardians* (1851) 17 Ad. & El. N. S. 149; *Burch v. Hardwicke* (1878) 30 Gratt. 24.

The Constitution of Missouri demands that no person shall be elected or appointed to any office in this State, civil or military, who shall not have resided in this State one year next preceding his election or appointment. Const. 1875, art. 8, sec. 12. The Attorney-General represents that defendant holds the office of chief of police of Kansas City in violation of that provision of the organic law.

It is not the duration of defendant's office but the nature of the functions appertaining to the office that determines whether its incumbent is subject to respond to the call of the State by its writ of *quo warranto*.

By the charter of Kansas City the police chief is repeatedly named as a city officer. He is given large personal powers of arrest as a conservator of the peace; he is the head of the active police force of the city; he is paid from the public funds. Art. 4, sec. 20; Art. 11, secs. 20, and 24; Art. 17, sec. 13. His duties under the charter involve the exercise of important powers of government which the people have delegated to him by law for the preservation of peace and order. He is obviously a public officer. *Brown v. Russell* (1896) 166 Mass. 14 (43 N. E. Rep. 1005). And he must possess the qualifications as to residence which the Constitution demands of the incumbent of "any office in this State." *State ex rel. v. Valle* (1867) 41 Mo. 29.

There can be no doubt that the law of to-day is that no person can hold a public office who does not meet all the requirments of the organic and statutory law governing the office, and that a person who enters into such office, being ineligible thereto, may be ousted

by means of a writ of *quo warranto*. *State ex rel. Snyder v. Newman* (1887) 91 Mo. 445 (3 S. W. Rep. 849).

2. The second ground of defendant's plea to the jurisdiction consists of the claim that the question of his eligibility is one within the exclusive power of the board of police commissioners to decide. That contention is founded on the declaration touching "exclusive jurisdiction" of the board, contained in section 22 of article 11 of the charter. A careful reading of that section satisfies us that the grant of exclusive jurisdiction refers only to the trial of complaints against policemen, after the appointment for a term of years. The language of the charter on that point does not purport to confer exclusive jurisdiction on the board to determine the eligibilty of any officer or patrolman of the police force. If it did purport to do so, we should then have to inquire how far such an enactment could be supported in view of the large grant of jurisdiction in *quo warranto* to the Supreme Court by the organic law. But what has been already said renders unnecessary any further discussion on this branch of the case.

3. We conclude that defendant's plea to the jurisdiction is not well taken, and that the motion of the Attorney-General to strike it out as insufficient should be sustained.

4. In the brief of counsel for defendant, he asks to be allowed to answer on the merits, in event his plea to the jurisdiction should be adjudged insufficient. Assuming that the code of practice is applicable to proceedings such as this, it appears to us that the court, in the exercise of its discretion, should give defendant leave to answer over, provided he pleads to the merits instanter, so as to cause no substantial delay in getting to a judgment in the cause. Judge ROBINSON joins in this opinion.