STATE OF MISSOURI EX REL. MAY McPIKE, Relatrix, v. WILLIAM C. HUGHES, EDWARD J. McCULLEN and LYON ANDERSON, Judges of the St. Louis Court of Appeals.—No. 40006.—199 S. W. (2d) 405.

Court en Banc, February 10, 1947.

*Edwin D. Franey* and *Hay & Flanagan* for relatrix.

1024

*George F. Heege* for respondents.

DOUGLAS, J.—May McPike, the relatrix, recovered a judgment for personal injuries against the St. Louis County Bank in the Circuit Court of St. Louis County for $2,500 on May 23, 1945. The bank's appeal was not timely perfected, and on May 15, 1946 the bank obtained the issuance of a writ of error by the St. Louis Court of Appeals directed to the trial court.

The relatrix then brought in this court this original proceeding in prohibition ▇▇▇ against the Judges of the St. Louis Court of Appeals to test the right of that court to continue to issue writs of error in view of the provision of the new Civil Code abolishing them in civil cases. The new Civil Code became effective on January 1, 1945.

Laws 1943, pp. 353-397, Mo. R. S. A. sec. 847.1 — .145. Section 125 provides: ''Writs of error are abolished in civil cases. Review shall be by appeal, which shall constitute a continuation of the proceeding in the trial court and be deemed to present all issues which heretofore have been presented by writ of error and appeal.''

This court has considered the authority of the legislature to prescribe procedure in connection with original remedial writs. Discussing this in connection with the right of this court to issue an original writ of quo warranto, this court said: ''It is beyond the power of the legislature to interfere with this jurisdiction, 'and it will not be intended that a legislative enactment was designed to take such jurisdiction away, although such enactment should confer another and distinct remedy upon some inferior court or board.' '' State ex inf. McKittrick v. Wymore, 343 Mo. 98, 119 S. W. (2d) 941. And see State ex rel. Walker v. Equitable Loan and Ins. Co., 142 Mo. 325, 41 S. W. 916; State ex inf. v. Vallins, 140 Mo. 523, 41 S. W. 887; Ex parte Hagan, 295 Mo. 435, 245 S. W. 336.

However, within constitutional limits the legislature, as a general rule, has power reasonably to regulate and control the forms of procedure for the administration of justice. Thus it may ordinarily regulate the procedure by which jurisdiction conferred by the constitution may be exercised; it may prescribe practice and procedure so long as it does not defeat or materially impair the exercise of such jurisdiction. 16 C. J. S., Constitutional Law, sec. 128; 11 Am. Jur., Constitutional Law, sec. 206.

In abolishing review by writ of error and confining it to appeal only, the legislature was following the trend exhibited in other jurisdictions. ''While the writ of error does not owe its origin to any statute, since it is a writ of right under the common law system, it is within the control of the legislature except where guaranteed by constitutional provision as it is in some states. While the writ has not been entirely abolished, it is gradually being eliminated in the various jurisdictions of the United States. In many jurisdictions the writ has been expressly abolished, while in others the statutes providing for appeals have been construed to abolish by implication the right to a writ of error in cases in which an appeal may be taken. The writ of error, which was formerly the manner of review in the Federal courts in law actions, has now been generally abolished and the appeal substituted.'' 2 Am. Jur., Appeal and Error, sec. 6.

The general rule is stated that unless restricted or prevented by constitutional provision, the legislature may regulate, limit, or abolish the writ of error. 4 C. J. S., Appeal and Error, sec. 10(b).

Relatrix argues the legislature was not restricted by the Constitution of 1875 from abolishing writs of error. She says: ''At the time of the adoption of the Constitution of 1875 the method of appellate review was by appeal (Laws 1871, page 50, Sec. 42) or by writ

of error (Laws 1871, page 46, Sec. 1), appeals having been first provided for by the Act of December 21, 1818, 1 Terr. Laws, page 608, Sec. 2, and the statutory provisions for writs of error first appearing in the Act of July 3, 1807, 1 Terr. Laws, page 124, Sec. 65. There is nothing in Section 12 of Article VI of the Constitution of 1875, however, providing that there should always be these two methods of appellate review by the St. Louis Court of Appeals for, by this section, said court was merely vested with appellate jurisdiction, nothing being said as to how such jurisdiction should be invoked.

"Nor can it be said that the language 'Said court shall have power to issue writs of *habeas corpus, quo warranto, mandamus, certiorari*, and other original remedial writs, and to hear and determine the same'; vests said court with jurisdiction to issue writs of error as another original remedial writ, for a writ of error is not an original remedial writ within the meaning of this clause. The phrase 'and other remedial writs' first appeared in the Constitution of 1820. Section 2 of Article V thereof provided that 'The Supreme Court, except in cases otherwise directed by this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, under the restrictions and limitations in this constitution provided,' and Section 3 of said Article provided that 'The Supreme Court shall have a general superintending control over all inferior courts of law. It shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari*, and other original remedial writs; and to hear and determine the same.'

"It is apparent that the words 'and other original remedial writs' as used in the Constitutions of 1820, 1865 and 1875 have reference only to other original remedial writs similar to the four specifically mentioned by which the Supreme Court and the St. Louis Court of Appeals might exercise original jurisdiction, and do not embrace a writ of error, which, while it has been referred to by this court as an original writ (State ex rel. Schuhart v. Rose, 296 Mo. 156, 246 S. W. 196, 1. c. 198), and as the commencement of a new suit (Spotts v. Spotts, 55 S. W. (2d) 977, 331 Mo. 917), was actually issued as part of the appellate jurisdiction exercised by the Supreme Court and the courts of appeals. That the phrase 'original remedial writs' has reference only to writs of the same class or genus as the four original writs specifically mentioned is clear from the following excerpt from the opinion of this court in Vail v. Dinning, 44 Mo. 210, 1. c. 214, 215: 'It is very plain that were it not for the express exceptions contained in the constitution, this court could exercise no original jurisdiction. As it is, its power is confined to certain specified writs, and others of a like remedial nature. It may not be easy to specify all the writs which would properly come within this designation. It is obvious, however, that reference is made to writs of the same class or genus.' "

1028

Section 125 of the new Civil Code was adopted while the Constitution of 1875 was in effect. That constitution provided by Article VI, Section 12 that the St. Louis Court of Appeals "shall have power to issue writs of habeas corpus, quo warranto, mandamus, certiorari, and other original remedial writs, and to hear and determine same." The same section provides for appellate review of the decisions of the St. Louis Court of Appeals by the Supreme Court both by appeal and by writ of error. The Constitutional Amendment of 1884, Section 5, changed this procedure and provided for appellate review directly from the trial court to the Supreme Court both by appeal and by writ of error. It thus appears that the Constitution of 1875 and the Amendment of 1884 employed the term writ of error in the same sense of appellate review and not in the sense that it constituted a proceeding within the original jurisdiction of the court.

This court has recognized that "in Missouri the distinctions between the ancient functions of writs of error and appeals have been modified or obliterated as our legislation has combined and amalgamated the scope of the two processes for review; the principal differences now remaining being in the time when and the manner in which they may be resorted to." State v. Hardy, 339 Mo. 897, 98 S. W. (2d) 593.

Even in the early cases where the statutes still made some distinction between appeal and writ of error as methods of appellate review this court inclined more to the view that the *substance* of the right of review must be maintained than to perpetuating the historical and common law distinction as to the method of review. See Blunt v. Sheppard, 1 Mo. 219; Graves & Ravenscroft v. Black, 1 Mo. 221; City of St. Louis v. Marchel, 99 Mo. 475, 12 S. W. 1250.

The substance of appellate review is maintained by the same Section 125 of the new Civil Code which continues review by appeal on all issues which theretofore had been presented by both writ of error and appeal. This affords a much more comprehensive and just method of review than that obtained by a common law writ of error which provided review in common law actions only and was confined ▮▮▮ to errors of law appearing on the face of the record. And this is especially true in view of the repeal of Sections 1194 and 1227, R. S. 1939, Mo. R. S. A., authorizing the use of bills of exceptions under a writ of error.

We hold that the writ of error contemplated by the Constitution of 1875 was merely a method of review applicable to appellate jurisdiction rather than to original jurisdiction. The constitution did not prescribe the methods or machinery for obtaining appellate review. It is the general rule that "the mode or method of obtaining appellate review is almost entirely a matter of statutory regulation." 4 C. J. S., Appeal and Error, sec. 8.

At the same time the legislature enacted Section 125 it repealed the statutory procedure for obtaining a writ of error, as we point out later. But the legislature has preserved in the very same courts the same or better right of review under another name and another procedure. It has replaced an obsolete, highly technical means of review with one that is practical and expeditious. Thus the effect of Section 125 is to abolish writs of error in name only, and not to destroy or impair any substantial rights of litigants.

Therefore we rule the St. Louis Court of Appeals had no jurisdiction to act in the matter since the method for invoking appellate review is by appeal, which the litigant failed properly to do.

The Constitution of 1945 which went into effect on March 30, 1945 eliminated all references to the term writ of error. It provided in Article V, Section 4: "The supreme court, courts of appeals, and circuit courts shall have a general superintending control over all inferior courts and tribunals in their jurisdictions, and may issue and determine original remedial writs."

Can we say the use of the blanket term "original remedial writs" intended to restore writs of error which had been theretofore abolished by the legislature by a law enacted in 1943? We think not. "It is settled by very high authority that in placing a construction on a Constitution or any clause or part thereof, a court should look to the history of the times and examine the state of things existing when the Constitution was framed and adopted, in order to ascertain the prior law, the mischief, and the remedy. A constitutional provision must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them." 11 Am. Jur., Constitutional Law, sec. 63. We hold the Constitution of 1945 does not authorize the use of a writ of error.

When the legislature abolished writs of error by Section 125 it also expressly repealed the statutory provisions governing writs of error contained in Sections 1194-1223, R. S. 1939, Mo. R. S. A. These statutes had so completely covered the subject that they had abrogated the common law and it was no longer applicable in this state to writs of error. The repeal of statutes which have abrogated the common law on the subject dealt with does not ipso facto revive the common law. State v. Slaughter, 70 Mo. 484; Hindman v. City of Springfield, 80 Mo. App 579. This rule is based on statute. Section 658, R. S. 1939, Mo. R. S. A., provides: "When a law repealing a former law, clause or provision shall be itself repealed, it shall not be construed to revive such former law, clause or provision, unless it be otherwise expressly provided; . . . " Thus, the common law governing writs of error has not been revived.

By issuing the writ of error, respondents have exceeded their jurisdiction.

It is ordered our preliminary rule in prohibition be made permanent. *Hyde* and *Leedy, JJ.,* and *Tipton, C. J.,* concur; *Ellison, J.,* concurs in separate opinion; *Conkling* and *Clark, JJ.,* concur and · concur in separate opinion of *Ellison, J.*

### SEPARATE CONCURRING OPINION.

ELLISON, J. (concurring)—I agree with the holding in the · principal opinion that writs of error were not included among the ''original, remedial writs'' which Art. V, Sec. 4 of the new Constitution of 1945 provides generally that the appellate and circuit courts of the State may issue. Writs of error are nowhere mentioned in it. Wherever they were mentioned in the Constitution of 1875 (four times) they have been omitted. Probably the Constitutional Convention favored the step taken by Sec. 125 of the new Civil Code, Laws Mo. 1943, pp. 353, 390, Mo. R. S. A., Sec. 847.125 in abolishing the writ.

Whether Sec. 125 of the Code was valid when enacted in 1943, under the Constitution of 1875, makes no difference, for the writ of error in this case was issued on May 15, 1946, over a year after the new Constitution had gone into effect on March 30, 1945, and had itself abolished writs of error as constitutionally sanctioned writs. At the time there were no statutes authorizing them, and have not been since. *Conkling* and *Clark, JJ.,* concur.