STATE OF MISSOURI, Defendant in Error, v. GEORGE EDWARD CHARLTON,
alias JOCK CHARLTON, Plaintiff in Error, No. 42707—251 S. W.
(2d) 82.

Court en Banc, September 8, 1952.

*J. E. Taylor*, Attorney General, and *Paul N. Chitwood*, Assistant Attorney General, for defendant in error.

LEEDY, J.—George Edward (alias Jock) Charlton brings error to review his conviction in the Pike Circuit Court for robbery in the first degree, and his consequent sentence to ten years' imprisonment in the penitentiary. He was represented at the trial by court-appointed counsel, who filed a motion for new trial in his behalf, but they do not represent him on this appeal, his appearance here being by brief pro se. From matters de hors the record it appears that he is presently confined in the penitentiary under his sentence.

The case is here on the record proper, and the only question of any moment is one of statutory construction (that as to which there was dissent in division), i. e., whether the proviso contained in RSMo 1949, § 485.100, VAMS, authorizes *this court* to order that a transcript of the court reporter's notes of the evidence or oral proceedings in a criminal case be furnished, at public expense, to an indigent plaintiff in error for the purpose of appellate review. The divisional opinion construed the proviso as being applicable to,

and so empowering, this court. Such question was raised by the court sua sponte, and, therefore, was not briefed, nor has it been on the present submission. Because it constituted the only point of difference and the pivot on which the case turned in division, transfer to banc was ordered so that the question might be finally settled.

Chapter 485, RSMo 1949 and VAMS, deals with the subject of circuit court reporters and stenographers to supreme and appellate judges. The proviso in question is a part of § 485.100, regulating charges by such court reporters for transcripts of their notes, and authorizing judges, in their discretion, to order transcripts of the evidence or oral proceedings for their own use, and providing that the reporter's fees therefor be taxed as other costs in the case. The language of the mooted portion of the proviso is: "provided, that in criminal cases where an appeal is taken or a writ of error obtained by the defendant, and it shall appear to the satisfaction of *the court* that the defendant is unable to pay the costs of such transcript for the purpose of perfecting the appeal, *the court* shall order the same to be furnished and the court reporter's fees for making the same shall be taxed against the state or county as may be proper; * * *." We believe its purpose and intent (and, therefore, the true meaning) will be made to appear upon a consideration of the history of the legislation of which the proviso is a part. It is therefore necessary to notice, at least in summary, the pertinent provisions of those statutes, and this can be done only at the expense of brevity and space.

The then new system of shorthand reporting as a method of preserving the record was extended to circuit and criminal courts in rural counties (45,000 inhabitants or less) in 1887. Laws 1887, p. 144. Two years later that act was replaced by one more detailed and comprehensive, and applicable only to counties of the class mentioned. Laws 1889, p. 293. The proviso first appeared in the 1889 act, and, except for the substitution of three words of equivalent meaning, its language has remained [84] the same throughout the intervening sixty-three years.

The shorthand reporting system was originally applied only in courts exercising criminal jurisdiction in cases of felony in cities having a population of more than 100,000 inhabitants. Laws 1881, p. 106. In § 5 of that act was the proviso "that in cases of appeal and on motions for new trials, the transcripts of the evidence shall be furnished to the defendant upon the order of the court without costs to said defendant." Unlike the later 1889 act, supra, there was no provision in the 1881 statute for taxing the cost against the state or county until so amended in 1907. Laws 1907, p. 440.

Except for the proviso now in question, and the kindred provision of the 1881 act just referred to, there was no provision made in any of the other acts extending the reporter system (to circuit courts in counties of more than 45,000 and less than 150,000 inhabitants,

Laws 1883, p. 59; to circuit courts in cities and counties having 350,000 inhabitants, or more, Laws 1887, p. 145; to circuit courts in counties of more than 100,000 and less than 350,000 inhabitants, Laws 1889, p. 291) by which authority was conferred upon any court to order that an indigent defendant in a criminal case be furnished with a transcript either at public expense or gratis.

The three acts last above cited (in parentheses) in substance severally authorized "any judge" in his discretion to order a transcript of all or any part of the evidence "for his own use," the fee therefor to be taxed as costs. But the proviso with which we are concerned continued to be applicable only to counties of 45,000 population or less until 1919, when all of the former acts (except that in relation to courts having jurisdiction of felonies in counties and cities of over 100,000), which then appeared as Articles I, II, III and IV of Chap. 113, RS 1909, §§ 11231-11258, were repealed, and a new chapter enacted in lieu thereof, which act, including the proviso, was made applicable on a statewide basis, at least as to all circuit courts, Laws 1919, p. 713. The statutes continued to remain in this state (except for amendments of an inconsequential nature) until the article respecting courts having felony jurisdiction in cities and counties of over 100,000 inhabitants was repealed in 1949 by Senate revision bill 1147—revision bills not being published in the 1949 session laws.

The divisional opinion interpreted the proviso as meaning that in criminal *appeals* the order on the court reporter to furnish defendant a transcript at public expense is to be made by the trial court, but that where a writ of error is obtained by defendant, it is the appellate court which is empowered to make such order, which, in cases of felony, means the Supreme Court. I think the language in question, when considered in connection with the foregoing historical background of the statute of which the proviso is a part, and cognate statutes, indicates that the legislature, by the use of the words "the court," intended to, and did refer to one and the same tribunal, whether review was sought by appeal or writ of error. I can place no other construction upon the following language of this court in State v. Pieski, 248 Mo. 715, 720, 154 S.W. 747, 748: "By the vaguest statutory inference alone can it be said that this [the Supreme] court has the right * * * to permit the prosecution of an appeal without the payment of costs. These inferences arise only from the provisions of our laws providing for the duties of official stenographers in the circuit courts of the state. [Secs. 11257, 11263, and 11246, R.S. Mo.] By virtue of these sections, *the trial court, in case of an appeal or suing out of a writ of error in a criminal case,* if 'it shall appear to the satisfaction of the court that the defendant is unable to pay the costs of such transcript for the purpose of making the appeal, the court shall order the same furnished,

and the stenographer's fee for making the same shall be taxed against the state or county, as may be proper.' '' (Emphasis supplied.)

The provision in question does not now appear, nor has it ever appeared in the Code of Criminal Procedure where, if it were intended to apply to both trial and appellate courts, it would logically be expected to be found. The framers of that code were careful to specify in other particulars, when dealing with appeals and writs of error, that [85] either the appellate or the trial courts were authorized to do certain acts. For example, see § 547.130 providing: "No such appeal or writ of error shall stay or delay the execution of such judgment or sentence * * * unless the supreme court * * * or the court in which the judgment was rendered * * * shall make an order," etc. But even more persuasive to me is the fact that an appellate court, unlike the trial court, does not have the facilities for determining the question of whether or not the defendant is able to pay the cost of such transcript. Defendant has the burden of satisfying the court on that question as a condition to his right to a transcript without cost. How can it be tried in this court without requiring witnesses to come to Jefferson City, convening the court, and hearing the proofs pro and con? I simply do not believe this was ever intended to be done merely because a defendant in a criminal case elected to have his conviction reviewed by writ of error rather than by appeal. Both modes of review are processes under the appellate as distinguished from the original jurisdiction of this court. State ex rel. McPike v. Hughes, 355 Mo. 1022, 199 S.W. 2d 405.

Relator's claim in State ex rel. Martin v. Wofford, 121 Mo. 61, 25 S.W. 851, was not based on the proviso now under scrutiny, but, on the contrary, mandamus was issued to enforce compliance with the kindred 1881 act (§ 8256, RSMo 1889), which provided that "in cases of appeal and on motions for new trial, the transcripts of the evidence shall be furnished to defendant upon the order of *the court* without cost to said defendant." (And, as previously noted, without compensation to the reporter.) While it is beside the point, it is, nevertheless, interesting to note that the innovation in preserving the trial record as introduced by these statutes appears to have met with something less than judicial approbation. Note the criticism of this court in 1895 in the Wofford case (l.c's 74 and 854): "The state has adopted this system of stenography. It is very onerous and expensive on litigants who are able to pay for the service, but, if it is to result in denying a poor person his appeal, the sooner it is dispensed with the better. Expedition of public business is desirable, but not at the expense of the substantial rights of litigants. It is no exaggeration to say this system has increased the cost of appeals in this court almost fourfold, with little or no corresponding benefits." The views of the court in this respect seem

to have undergone rather sudden and abrupt change because the author of the Wofford opinion, five years later, said in State v. Ernest, 150 Mo. 347, 349, 51 S.W. 688: "Why the legislature should impose upon this court, with an overburdened docket, the duty of reading immense transcripts in search for errors, without the aid of briefs on either side, is past our comprehension. When a defendant in a criminal case has been tried and convicted in a court of general jurisdiction, it would certainly seem that, if he insisted on a review of the proceedings in that court, he should at least be required to pay for his transcript and docket fee to this court, and point out by brief the errors of which he complains; but it has now become a common practice to give him a free stenographic record at the cost of the state, and when that transcript is filed here we are required, without so much as a suggestion of error, to go laboriously through every step * * * to discover error. The practice has become intolerable. The circuit judges of St. Louis have no discretion. The law requires them to order the free transcript, but the circuit courts in the country have a discretion, and we think it should only be exercised in giving free transcripts where they have grave doubts as to their judgments."

If the appellate court may make the order where writs of error issue, then the same verbiage ("the court") authorizes like action in appeals. We know the latter cannot be meant (as the divisional opinion conceded) because there would have been no occasion to resort to mandamus to compel the judge of the trial court to make the order, as was done in the Wofford case, supra, and in State ex rel. Lashley v. Ittner, 315 Mo. 68, 292 S.W. 707. Finally, it may be asserted that, as a matter of practice and understanding of its meaning on the part of the bench and bar of this state, during [86] the more than six decades the proviso has been on the statute books, no appellate court has ever made any such order. This court carefully refrained from doing so when it merely sustained plaintiff in error's "motion to sue in forma pauperis" and ordered that the writ issue without the payment of the $10 docket fee. It is to be remembered, as pointed out in the Pieski case, supra, that "orders permitting actions to be prosecuted in forma pauperis are not binding, except in the court wherein such order is made." (l.c's 720 and 748.)

█ Having concluded that the power under this statute to order a transcript at public expense is limited to the trial courts, and no application, timely or otherwise, having been made to the trial court in this case, it follows that review must be limited to the record now before us, which, as has been pointed out, consists of only the record proper. This we have examined for error, as is our duty even in the absence of assignments thereof, and find it regular and sufficient. The judgment should be, and is, affirmed.

376

*Conkling, Dalton, Hollingsworth* and *Hyde, JJ.*, concur.
*Ellison, C.J.*, dissents in separate opinion filed.
*Tipton, J.*, dissents and concurs in dissenting opinion of *Ellison, C.J.*

ELLISON, C.J, (dissenting).—I respectfully dissent from the holding in the principal opinion. The plaintiff in error, hereinafter called plaintiff, was charged in the circuit court of Pike County with robbery in the first degree by means of a dangerous and deadly weapon, a glass bottle, under Mo.R.S. 1949, § 560.135, V.A.M.S. One count of the information charged him as an actual participant in the robbery and the other as an accessory before the fact. In either case the maximum punishment was death, § 560.135, supra, and Mo.R.S. 1949, § 556.170, V.A.M.S., but the punishment assessed by the jury was only ten years' imprisonment in the penitentiary. He is now confined there, and brings his case here by writ of error under Mo.R.S. 1949, § 547.270, V.A.M.S., without counsel. The transcript sent up covers only the record proper. The first question to be decided is the scope of our review.

██ Apparently the convict was not notified personally of the date on which his case was set for hearing here because the record sent up showed he had counsel below, and he filed no brief and failed to appear—which latter did not prejudice his right to have his case determined, under § 547.270, supra. The cause was submitted to this court by the Assistant Attorney General on his brief without oral argument. But later the same day, after the submission, plaintiff filed a manuscript brief. This delay was caused not only by the plaintiff's failure to receive notice but also by the fact that the Assistant Attorney General had first served his brief on plaintiff's trial counsel in Pike County, and they declined to accept service thereof since they no longer represented him.

Then the Assistant Attorney General served his brief on plaintiff in the penitentiary only one day before the hearing in this court, which was plaintiff's first notice thereof. And as stated after the submission here but on the same day, plaintiff filed his manuscript brief. Most of his assignments therein raise matters of exception, whereas no bill of exceptions has been brought up. So it is necessary to determine whether these matters of exception can be considered on this review—and whether plaintiff is still entitled to have brought up the bill of exceptions, or a transcript of the pertinent evidence under our Rules 1.31 and 1.34(b). [Emphasis in the following six paragraphs is ours].

Mo.R.S. 1949, § 547.110, V.A.M.S., applicable to criminal cases, provides: "When any appeal shall be taken or writ of error issued, which shall operate *as a stay of proceedings* it shall be the duty of the clerk of the court in which the proceedings were had to make out a full transcript of the record in the cause *including the bill of*

*exceptions,* judgment and sentence, and certify and transmit same to the office of the clerk of the proper appellate court without [87] delay;''—provided that the parties may agree upon an abbreviated or partial transcript.

Mo.R.S. 1949, § 547.130, V.A.M.S., provides that: "No such appeal or writ shall *stay* or delay the execution of such judgment or sentence, *except in capital cases,* unless the supreme court, or a judge thereof, or the court in which the judgment was rendered, or the judge of such court, on inspection of the record, shall be of the opinion that there is probable cause for such an appeal or writ of error, or so much doubt as to render it expedient to take the judgment of the supreme court thereon"—and shall order that the appeal shall operate as a stay of proceedings.

No such order has been made in this case. And while the punishment for the crime under § 560.135, supra, ranges from death to a minimum penitentiary sentence of five years, yet the punishment assessed by the jury was only ten years' imprisonment in consequence of which the cause is not regarded as a capital case,[1] automatically staying the proceedings pending appeal and requiring a full bill of exceptions under § 547.110, supra.

Mo. R.S. 1949, § 547.120, V.A.M.S., provides: "When the appeal or writ of error does *not* operate as a stay of proceedings, such transcript shall be made out, certified and returned, on the application of the appellant or plaintiff in error, as in *civil* cases, except that the costs of the transcript shall not be required in advance."

Mo.R.S. 1949, § 512.110(2), V.A.M.S., applicable to appeals in civil cases, provides that "The transcript on appeal shall contain *all questions to be presented* to the appellate court for decision by either appellant or respondent, except that *at the direction of either party* the transcript shall include all of the evidence in the case * * *." If the appellate court find any thereof unnecessary, the cost thereof shall be paid by the party responsible for its inclusion.

When plaintiff filed here on June 2 his petition for a writ of error and a motion for leave to proceed as a poor person (both verified), he prayed in both that the circuit court be required to send up the record and bill of exceptions in duplicate. In the motion he asked that the bill of exceptions be furnished to him, "in order that he *may properly prepare his brief* in the cause." [Emphasis ours]. In his petition for the writ he alleged the State failed to adduce evidence sufficient to sustain the verdict, judgment and sentence, and that "certain errors" were committed by the State and the trial court in the absence of which a different result might have been

---

[1]Ex parte Dipley, 233 Mo. 235, 241, 135 SW. 56, 58; State v. Shepard, 334 Mo. 423, 426(1), 67 SW. 91, 93(1).

reached. This court ordered the trial court to "send up a perfect transcript of the record and proceedings in the cause aforesaid as fully as the same remain of record before you in said court," but did not specify in terms a transcript of the evidence.

Mo.R.S. 1949, § 485.100, V.A.M.S., likewise applicable to civil cases, contains a proviso that in criminal cases where an appeal is taken or a writ of error obtained by the defendant, and it shall appear to the satisfaction of the court that the defendant is unable to pay the costs of such transcript for the purpose of perfecting the appeal, the court shall order the same to be furnished and the court reporter's fees for making the same shall be taxed against the state or county as may be proper, duplicate transcripts to be furnished, for one of which he shall be paid.

It will be observed this statute provides that in criminal cases, brought up either by appeal or writ of error, if "the court" finds the defendant is unable to pay the costs of the transcript, "the court" shall order it furnished at the expense of the state or county. This raises the question as to what the words "the court" mean in their context. In an *appealed* case it is obvious they refer to the trial court which was the court of original jurisdiction. But when a writ of error is obtained from this court, it is a new suit reviewing the proceedings below and not a mere continuation thereof.[2] And this [88] court is the one that has original jurisdiction of the review proceedings.

Writs of error in civil cases were abolished by the new Civil Code, Laws Mo. 1943, pp. 353, 390, Sec. 125; Mo.R.S. 1949, § 512.010, V.A. M.S. But this statute expressly provides it is "not intended to apply to criminal cases." And ever since the writ has been used in criminal cases under §§ 547.110, 547.120, 547.130, 485.100, supra. Likewise our Rule 1.34(c) fixes the time within which the writ may be brought at one year, long after the time for appeal has lapsed (end of term). Mo.R.S. 1949, § 547.070, V.A.M.S. And the plaintiff in error has the right to save exceptions and bring them up on a writ of error in a bill of exceptions approved by the trial court,[3] if he filed a motion for new trial which was overruled. And the plaintiff in error here did that below.

State ex rel. McPike v. Hughes, 355 Mo.1022, 1028-9, 199 SW. (2d) 405, 408(4, 8), held the writ of error was abolished. But it was dealing with a civil case. The ruling was based on Art. V, Sec. 4, Const. Mo. 1945, which provides: "The Supreme Court * * * may issue and determine original remedial writs." The opinion asked:

---

[2]23 C.J., p. 304, § 12; 4 C.J.S., p. 72, § 11c; Stafford v. Burroughs (Mo.) 186 SW. (2d) 588(1); Cunningham v. Kansas City, 225 Mo. App. 1063 (1), 38 SW. (2d) 734, 735(1).

[3]State v. Dimmick, 331 Mo. 240, 243 (1, 2), 53 SW. (2d) 262, 263(1); State v. Hardy, 339 Mo. 897, 899-900 (1, 2), 38 SW. (2d) 593; State ex rel. Malin v. Merriam, 159 Mo. 655, 660-1, 60 SW. 1112.

"Can we say the use of the blanket term 'original remedial writs' intended to restore writs of error which had been theretofore abolished by the legislature by a law enacted in 1943? We think not." But the law referred to was Sec. 125, Laws Mo. 1943, supra, which expressly declared it was *not intended to apply* to criminal cases. So the decision cannot be treated as authority that writs of error have been abolished in criminal cases.

The McPike case, supra, also held the Constitution of 1875 was "merely a method of review applicable to appellate jurisdiction rather than to original jurisdiction." And that is true in the sense that writs of error and appeals both involve a review of the proceedings, and sometimes of the evidence, in a lower court. But in a writ of error case the upper court is the court of original jurisdiction. It *orders* the record of the lower court to be sent up. And it may do so after the lower court has lost jurisdiction of the case by lapse of the term without an appeal, except in such matters as issuing and improving a bill of exceptions and correcting errors in the record. Mo. R.S. 1949, § 546.090, V.A.M.S. No one else can do that except the judge, clerk and reporter of the lower court.

This being true we have power to order a bill of exceptions sent up under § 485.100, supra, as the plaintiff in error has asked that we do. Indeed, even in *appealed* cases § 512.110(3), supra, provides that if anything material to either party is inadvertently omitted or misstated in the transcript sent up, the *appellate* court may order it corrected, or order a supplemental transcript sent up.

In State ex rel. LaRue v. Hitchcock, 171 Mo.App. 109, 127(9), 153 SW. 546, a civil case, the plaintiff-relator had sued as a poor person on a motion duly sustained by the trial court. After an adverse judgment she appealed to the St. Louis Court of Appeals. She then moved the trial court to require the court reporter to furnish her without payment of fees a complete transcript of the evidence with the objections, rulings and exceptions pertaining thereto. The trial court overruled her motion, and the St. Louis Court of Appeals by mandamus required the trial judge to order the reporter, an officer of the court, to furnish the transcript. If that may be done in a civil suit, certainly it can be done in a criminal case involving the liberty of the accused.

And in State ex rel. Martin v. Wofford, 121 Mo. 61, 73-4 (10-11), 25 SW. 851, 854(5), the relator was convicted of murder in the first degree and appealed to this court. As a pauper he applied for a full transcript of the evidence and exceptions saved, for use on his appeal, but the court reporter refused to furnish it. He then moved the trial court to make an order to [89] that effect on the court reporter, but that also was refused. On bringing mandamus here the trial judge was required to make the order on the reporter.

In his brief here, the plaintiff in error makes six assignments of error, at least four of which required the production of evidence below. In his petition for the writ he alleged the evidence was insufficient to sustain the verdict, judgment and sentence. We are unable to rule on these assignments without a bill of exceptions covering the subject matter thereof. The plaintiff asked for duplicate bills of exceptions in his application for the writ of error, under § 485.100, supra, but it was not in terms ordered brought up. Acting pro se he obviously was ignorant of the condition of the record as brought up and even of the date of hearing until he was served with the State's brief the day before the hearing. For these reasons I dissent from the holding in the principal opinion and think the submission should be set aside and the cause held on the docket until the record is completed.

*Tipton, J.,* concurs.